**CENTRAL OF GEORGIA RAILROAD COMPANY et al., Plaintiffs,**

v.

**The UNITED STATES of America and the Interstate Commerce Commission et al., Defendants.**

Civ. A. No. 2565–72.

United States District Court, District of Columbia.

March 17, 1976.

Charles A. Horsky, Michael Boudin and Arthur F. Fergenson, Washington, D. C., for the Central of Georgia Railroad Co., James L. Tapley and Peter S. Craig, Washington, D. C., for the Southern Railway Co., and Neill W. McArthur, Jr., Jacksonville, Fla., for the Seaboard Coast Line Railroad, jointly filed memoranda in support of the motion.

Thomas E. Kauper, Asst. Atty. Gen., Carl D. Lawson, Atty., Dept. of Justice, and Earl J. Silbert, U. S. Atty., for the

United States, and Fritz R. Kahn, Gen. Counsel, and Raymond Michael Ripple, Washington, D. C., Atty., for the Interstate Commerce Commission, jointly filed a memorandum in opposition to the motion.

Richard J. Hardy, Washington, D. C., for the U. S. Clay Producers Traffic Association, Inc., filed a memorandum in opposition to the motion.

Before McGOWAN, Circuit Judge, and HART and PRATT, District Judges.

OPINION

McGOWAN, Circuit Judge:

Plaintiff railroads have moved this court to require the Interstate Commerce Commission to comply with a judgment and injunction previously entered by this court in *Central of Georgia Railroad Co., et al. v. United States, et al.,* 379 F.Supp. 976 (D.D.C.1974), *aff'd sub nom. United States Clay Producers Traffic Association v. Central of Georgia Railroad Co.,* 421 U.S. 957, 95 S.Ct. 1944, 44 L.Ed.2d 446 (1975). For the reasons set forth below, we grant the motion.

I

The circumstances giving rise to our injunctive decree are set forth at length in our earlier opinion. They are, in brief, that in 1969 plaintiff railroads filed proposed tariff changes pursuant to Section 15(7) of the Interstate Commerce Act, 49 U.S.C. § 15(7) (1970), cancelling a multiple car rate that had been in effect since 1962. Both the Review Board and a three-member panel of the Commission, acting as an appellate division, concluded that the new rate schedule (which in effect made the existing single car rate applicable to traffic formerly moving on the multiple car rate) was, on the evidence of record, just and reasonable. The division nevertheless invalidated the newly filed schedule on the ground that the carriers had failed to show "the existence of circumstances or conditions by virtue of which they could not reasonably be expected to achieve cost savings inherent in multiple-car service."

On review of the Commission's orders, this court concluded that the Commission, given its acceptance of the Review Board's findings, was without statutory authority to impose that burden of proof on the carriers; and we "ordered, adjudged, and decreed that the Commission's orders . . . are hereby permanently enjoined, set aside and nullified." 379 F.Supp. at 985.

By an order entered July 24, 1975 and served August 20, 1975, the Commission reopened the prior proceeding and ordered plaintiff railroads to show "the existence of circumstances or conditions by virtue of which they could not reasonably be expected to achieve cost savings normally inherent in multiple-car service." Plaintiff railroads, citing our earlier decision, requested the Commission to terminate the reopened proceeding. After the Commission denied that request by an order served November 25, 1975, they filed the motion before us seeking an order requiring compliance by the Commission with our earlier decision.

II

The Commission's justification for reopening the proceeding resides in its assertion that our opinion contemplated that that could be done for the purpose of affording the carriers an opportunity to meet the burden of proving that there are no conceivable conditions under which the multiple car rate could achieve significant cost savings. The opinion does not, either in its explicit terms or by fair inference from them, bear any such construction. Our decision turned upon the principal argument made by the carriers, namely, that, given the acceptance by the Commission of the facts found by the Review Board on this record, it could not, without violating the statutory scheme, impose a further burden of proof of this kind upon the carriers. We indicated that the Commission is free at any time under the statutory scheme, either upon complaint or its own motion, to institute a Section 15(1) investigation, 49 U.S.C. § 15(1) (1970), in which it will, of course, have the burden

of proof on the issue of the justness and reasonableness of the rate now legally in effect. But the Section 15(7) proceeding has been terminated by the final judgment of this court.

The carriers' first alternative contention (in addition to the claimed violation of the statutory scheme referred to above) before us earlier was that there was no evidence in this record supporting any assumption that it was the carriers' own operating deficiencies that prevented the multiple car rate from realizing significant cost savings. We examined the evidence of record relevant to this issue in our opinion, not because doing so was necessary to reach the result we did, but because the carriers had in effect been accused in our court, as distinct from the administrative proceeding, of bad faith. In that context we noted that: "We are not to be understood as saying that under no circumstances could considerations of this kind be relevant with respect to the termination of a multicar rate," but "that the Commission, on this record and in the face of the findings accepted by it without question, could not properly find the plaintiffs deficient in terms of the burden of proof Congress intended them to carry." 379 F.Supp. at 985. These words cannot fairly be taken to mean that this particular proceeding, ending in orders which we found invalid and permanently enjoined, can be reopened.

The second of the two alternative points made by the carriers was that, if the court should hold against them on their principal contention, then surely administrative due process required that they be given on remand an opportunity to meet the additional burden of proof which the Commission belatedly imposed upon them. We did not deal with this contention in our opinion because we had held for the plaintiffs on their first—and principal—claim, namely, that the Commission had violated the statutory scheme. What the Commission assumes now is that we authorized a remand for this very purpose—a conclusion which is wholly at odds with both our opinion and the judgment entered upon it.

For the contrary reading of our opinion now pressed by it, the Commission relies heavily upon the memorandum filed by the Solicitor General with the Supreme Court in connection with the appeal taken only by the shippers in *Central of Georgia Railroad Co., supra.* The Solicitor General represented to the Court that the shippers' appeal "presents a narrow question of procedure and does not warrant plenary review by this Court." He noted that, as he put it, this court "carefully confined its holding to this particular record," and he suggested that on that record we "held that . . the Commission erred in barring the carriers from cancelling the multiple-car rate on the basis of the new standard, which the Commission announced after the evidentiary record made under the old standards had been closed." He concluded that "[A]ccordingly, if the Commission should wish *in the future* to adhere to its enlarged interpretation of the burden of proof requirement imposed by Section 15(7) in the context of a proposal to cancel a multiple-car rate, it *will* be able to do so in a hearing in which the carriers are put on notice regarding the scope of their burden of proof." (Emphasis supplied).

In the first place, we note that the Solicitor General errs in saying that we "held" that the Commission committed a procedural error in failing, before the record closed, to afford the carriers notice of the new standard and an opportunity to meet it. The fact is that we never addressed, much less resolved, this contention, which was the third point alternatively advanced by the carriers. Second, it cannot be assumed that the Supreme Court affirmed our decision upon a ground never alluded to by us in our opinion as a basis for our ruling. The more rational speculation, if speculation in this regard is appropriate at all, would be that it affirmed our decision by reference to the explicit ground on which the decision rested. Third, the Solicitor General's language, read closely, does not say flatly that *this* proceeding can be reopened. It speaks instead of

what the Commission can do "in the future," presumably meaning the next time a carrier files a cancellation of a multiple car rate.

At all events, we entered a judgment granting a permanent injunction which had the effect of terminating the Section 15(7) proceeding insofar as these parties are concerned. That judgment was not appealed by either the United States or the Commission; and it was affirmed by the Supreme Court. That proceeding is over, and the particular rate tariffs on file are legally effective. If the Commission wishes to make a new challenge to them in the form of a Section 15(1) proceeding, it can do so. What it cannot do, without violation of our final judgment, is to reopen this Section 15(7) proceeding and compel the carriers to meet the enlarged burden of proof which we held, on this record, inappropriate for a Section 15(7) case.

### III

■ The Commission argues that this court does not have jurisdiction to entertain plaintiffs' motion on the ground that, effective March 1, 1975, all actions to enjoin, set aside, or suspend orders of the Commission must be brought in a court of appeals.[1] But Supreme Court authority leaves no doubt that federal courts have continuing jurisdiction to protect and enforce their judgments. *See Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 18 L.Ed. 768 (1867) ([T]he jurisdiction of a court is not exhausted by rendition of judgment, but continues until that judgment shall be satisfied. . . . Process subsequent to issuance

of judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution); *Dugas v. American Surety Co.,* 300 U.S. 414, 428, 57 S.Ct. 515, 521, 81 L.Ed. 720, 728 (1937) ("[J]urisdiction follows that of the original suit . . .").

■ These cases provide firm support for our assertion of jurisdiction over this motion. The only possible source of difficulty in this regard concerns the new statute granting exclusive jurisdiction to the courts of appeal over post-March 1, 1975, actions for review of ICC orders. But the statute does not purport to limit the inherent power of three-judge district courts to enforce their final judgments in ICC cases; and we think that any purpose on the part of Congress to restrict that traditional and highly essential power would, if intended, have been clearly stated by it.

The Government relies on certain language in the new statute to argue that only review proceedings pending on the effective date of the statute are excepted from the new jurisdictional scheme.[2] But that exception simply indicates a congressional intent to permit actions that had been commenced in three-judge district courts prior to March 1, 1975 to proceed to final disposition. In light of the legislative history of the Act, we do not think that in establishing that exception Congress also evidenced an intent to preclude three-judge district courts from asserting jurisdiction to enforce their *prior final* judgments. Thus, we con-

---

1. Public Law 93–584, which was enacted on January 2, 1975, amended section 2321(a) of title 28 of the United States Code to provide: "Except as otherwise provided by an Act of Congress, a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Interstate Commerce Commission shall be brought in the court of appeals as provided by and in the manner prescribed in chapter 158 of this title." Pub.L. No. 93–584, § 5, 88 Stat. 1917 (1975). Section 2342(5) of chapter 158 of title 28 places exclusive jurisdiction in the court of appeals for proceedings described

in section 2321, *supra.* Public Law 93–584 was not to become effective until March 1, 1975. *See* Pub.L. No. 93–584, § 10, 88 Stat. 1917 (1975).

2. The language relied on provides: "[A]ctions to enjoin or suspend orders of the Interstate Commerce Commission which are pending when this Act becomes effective [March 1, 1975] shall not be affected thereby, but shall proceed to final disposition under the law existing on the date they were commenced." Pub.L. No. 93–584, § 10, 88 Stat. 1917 (1975).

clude that we have jurisdiction to entertain, and indeed should entertain, the motion.

The other arguments pressed by the Government do not persuade us otherwise. The Government maintains that this is not a motion to enforce an earlier judgment of this court but rather a motion to enjoin a new ICC order, namely, an order reopening the case. But it is this very order which conflicts with and impinges upon the final judgment of this court; and the Government's point is semantical rather than substantial in relation to the issue of this court's jurisdiction to protect its own judgment.

■ The Government's second argument is that there is no indication that this court intended to "retain" whatever jurisdiction was necessary to insure that the Commission complied with this court's earlier decision. The Government fails to deal, however, with cases such as *Riggs* and *Dugas,* discussed above. There was no indication in *Dugas,* for example, that the federal court expressed an intent to "retain" jurisdiction to insure compliance with its judgment; nor is there anything in the language of the Supreme Court opinions indicating that such a requirement exists. The Government bases such a requirement on various cases in the court of appeals for this circuit, *Greater Boston Television v. FCC,* 143 U.S.App.D.C. 383, 463 F.2d 268, 287–88 (1971) and *NLRB v. Wilder Manufacturing Co.,* 147 U.S.App. D.C. 152, 454 F.2d 995, 998 (1971), as well as on a case more directly in point from the Southern District of Florida, *Keller Trucking Inc. v. United States,* No. 73–292–Civ–JE (Nov. 11, 1975).

The court in *Keller* was presented with the same jurisdictional question as is now before us. Although that court concluded that, given the new review statute, it was without jurisdiction to entertain a motion to set aside an order of the ICC, it also expressly noted that it had "previously entered no substantive order granting or denying any substantive relief." The case *sub judice* is quite different in that we entered a permanent injunction against the order entered by the Commission in the Section 15(7) proceeding. *Greater Boston Television* and *Wilder* are equally inapposite. *Wilder* did not involve a motion to enforce a prior order, and *Greater Boston Television* concerned the issue of judicial discretion in reopening a prior agency proceeding.

The Government's final argument against jurisdiction is a policy one: the "old system" of three-judge court review could be "perpetuated *ad infinitum.*" The argument is more than a bit exaggerated and is obviously outweighed by the fact that there are policy arguments which cut the other way, such as the advantages to be gained in a case such as this where the panel handing down the initial decision is the best informed as to the precise scope of the initial holding.

■ In granting the motion, we emphasize that our prior judgment is a barrier to the Commission's reopening for the purpose of requiring plaintiff railroads to prove in this proceeding that they cannot reasonably be expected to achieve cost savings normally inherent in multiple-car service. If at any time hereafter the Commission has reason to believe that the rates presently in effect are unjust or unreasonable, it may seek to proceed against them under Section 15(1), but the Section 15(7) proceeding now purported to be reopened has been terminated by the final judgment of this court.

Wherefore it is ordered, adjudged, and decreed that the Commission's orders served on August 20, 1975 and November 25, 1975, are declared to be in conflict with this court's prior judgment and injunction, and are, accordingly, hereby permanently enjoined, set aside, and nullified.