Theodore Robert WILLOUGHBY,
Plaintiff,

v.

POTOMAC ELECTRIC POWER
COMPANY, Defendant.

Civ. A. No. PJM 94–214.

United States District Court,
D. Maryland.

May 25, 1994.

Paul Victor Jorgensen, Middletown, MD,
Matthew C. Leefer, Boonsboro, MD, for
plaintiff.

William D. Nussbaum & William P. Flanagan, Washington, DC, for defendant.

## OPINION

MESSITTE, District Judge.

The present case is particularly appropriate for transfer to another United States District Court pursuant to 28 U.S.C. § 1404(a). Accordingly, the Court will grant Defendant's Motion to Transfer the case to the United States District Court for the District of Columbia.

The Court explains.

### I.

Plaintiff THEODORE ROBERT WILLOUGHBY ("Willoughby") has sued Defendant POTOMAC ELECTRIC POWER

COMPANY ("Pepco") for breach of contract, fraud, and negligence in connection with his termination of employment with Pepco. The suit, originally filed in the Circuit Court for Montgomery County, was removed here at the instance of Defendant: Plaintiff is a citizen of Maryland, Pepco is a District of Columbia and Commonwealth of Virginia public utility corporation and not a citizen of this State.

In its Answer filed in this Court just a few days after the case was removed here, Defendant asserted that this Court is not a proper venue for this action but that venue properly lies in the United States District Court for the District of Columbia. Defendant indicated that it would be moving for an order transferring this action to that district, which it has now done. Plaintiff, who did not oppose the removal of the case to Federal Court, opposes its transfer to the District of Columbia Court.

## II.

On June 8, 1993, Judge Royce C. Lamberth of the U.S. District Court for the District of Columbia gave final approval to a Consent Decree negotiated by the parties in *In Re Pepco Employment Litigation* (D.D.C. 86–0603), a sizeable class action suit brought by African American and female plaintiffs against Pepco, Defendant here.[1] The Consent Decree, which embodied the terms of a complex settlement agreed to before the first of several class liability trials was to commence, was approved by Judge Lamberth following 6 years of litigation. In the suit, plaintiffs had raised claims of unlawful race and/or gender discrimination under Title VII of the Civil Rights Act of 1964 as amended in 42 U.S.C. § 2000(e) et seq.; 42 U.S.C. § 1981; and the D.C. Human Rights Act, *D.C.Code*, § 1–2512.

The Decree, which is nearly 60 pages long and contains numerous attachments and schedules, was the product of protracted negotiations involving the assistance of a court-appointed mediator. Its term is 5 years, *i.e.* through July 1998, and it expressly provides that Judge Lamberth retains jurisdiction over the action for purposes of entering all appropriate orders, judgments and decrees.

## III.

In the present case, Plaintiff Willoughby challenges Pepco's allegedly wrongful termination of his employment. Willoughby, a white male and former supervisor at Pepco, was terminated on June 4, 1993, following an investigation and determination by the company's internal Equal Opportunity Program office that he had violated the company's Equal Opportunity policies. Specifically, Willoughby was said to have interfered with the company's internal investigations of complaints raised by employees he supervised. Willoughby's actions unquestionably formed part of the factual predicate that underlay the litigation in the District of Columbia. In the present suit, among other things, Willoughby contends that he was an intended beneficiary of certain clauses of the District of Columbia settlement agreement (Counts I and II) and that certain representations made to him in connection with the settlement were either fraudulent (Count III and Count V) or negligent (Count IV). The inquiry at hand is whether these claims are more suitable for litigation in the District of Columbia than in Maryland.

## IV.

Pursuant to 28 U.S.C. § 1404(a), a district court is authorized to transfer any civil action to another district where it might have been brought "for the convenience of the parties and witnesses (or) in the interest of justice." The court of whom a transfer is asked has discretion to decide the motion on a case-by-case basis, taking into account considerations of convenience and fairness. *Stewart Organization Inc. v. Ricoh, Inc.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). The purpose of the transfer is to prevent the waste of time and money and to protect the various interests of the parties. *Ferens v. John Deere Company*, 494 U.S.

1. According to Pepco's counsel, there were over 100 plaintiffs and approximately 20,000 class members in that suit.

516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

■■■ All the traditional reasons for transfer may be found in the present case. First, section 1404(a) permits transfer to any District where the action "might have been brought". Given Willoughby's Maryland citizenship and Pepco's District of Columbia citizenship, the action clearly could have been brought in the District of Columbia. Moreover, Pepco's principal offices are in the District of Columbia, Plaintiff was employed and terminated there, and, from all that appears, every Pepco management employee involved in the decision to terminate Willoughby works in the company's facilities in Washington. Where, as here, the Defendant resides in another district, the claims giving rise to litigation arose in that other district, and most if not all the witnesses to the alleged misconduct reside or work in the other district, courts routinely order transfer. *See e.g. Wellons v. Numerica Savings Bank, FSB*, 749 F.Supp. 336 (D.Mass.1990); *Stanley v. Numero Uno Franchise Corp.*, 741 F.Supp. 1237 (M.D.La.1990); *Record Data International, Inc. v. Record Data of Michigan, Inc.*, 677 F.Supp. 915 (N.D.Ohio 1988); *Edwards v. Texaco, Inc.*, 702 F.Supp. 101 (E.D.Pa.1988).

■■■ Individualized considerations of convenience and fairness also argue in favor of a transfer of the case to the District of Columbia. This cause is tightly intertwined with the Consent Decree recently issued by the District of Columbia Court, which, as a matter of policy if for no other reason, should resolve this dispute. Indeed, generally speaking a district court that enters a consent decree and retains enforcement jurisdiction in all probability has exclusive jurisdiction over claims relating to it. *See Figures v. Board of Utilities*, 967 F.2d 357 (10th Cir.

1992); *see also Siddiqi v. Lane*, 748 F.Supp. 637 (N.D.Ill.1990).[2]

Practical considerations confirm the wisdom of the District of Columbia Court receiving this case. The parties to the Consent Decree, for instance, are bound by court order to respect confidentiality provisions, as well as mediation requirements, that might well interfere with jurisdiction of the Maryland forum. More fundamentally, the Administrator of the District of Columbia settlement, Jane Lang, Esquire, in a letter forwarded to the Court, has expressed concern that Plaintiff's assertions in the present case threaten the integrity of the District of Columbia litigation and

> could create a precedent which would potentially subject the Decree to interpretation by a multiplicity of courts (putting) the decree itself in jeopardy … … Having presided over the case for many years, and approved the Decree, Judge Lamberth … is intimately familiar with the issues … as well as the objectives of (the) settlement. To introduce another court into these complexities, without any knowledge of the long and intense underlying history, could be extremely disruptive.

This Court is in full agreement.

For all these reasons, the Court will see to the transfer of this case to the District Court for the District of Columbia.

Any other pending motions in the present case may be resolved by the District Court for the District of Columbia upon arrival of the case there.

**2.** Even absent an express retention of jurisdiction, having approved the consent decree, the District of Columbia District Court has jurisdiction to enforce it. *See e.g. Suburban O'Hare Commission v. Dole*, 603 F.Supp. 1013, 1026 (N.D.Ill.1985) ("subject matter jurisdiction exists generally in the district court to enforce its own consent decree"); *South v. Rowe*, 102 F.R.D. 152, 156 (N.D.Ill.1984 ("the court does not have to expressly state its intent to retain jurisdiction over a case in order to assure compliance with its [consent decree]"); *Central of Georgia Railroad Co. v. United States*, 410 F.Supp. 354, 358 (where district court renders judgment, there is no requirement that it express its intent to retain jurisdiction in order to insure compliance with its judgment).