**UNITED STATES of America, et al., Plaintiffs,**

v.

**John C. YORK, et al., Defendants.**

**Civ. No. 93–0839 (CRR).**

United States District Court, District of Columbia.

Dec. 7, 1995.

---

Eric H. Holder, Jr., United States Attorney, and Dara Corrigan, Assistant United States Attorney, Washington, DC. Of counsel were Harold J. Gross, Senior Tax Attorney, United States Department of Housing and Urban Development, as well as Barbara Nicastro, Attorney, Bethel & Nicastro, Washington, DC, and Jeffrey T. Sprung, Attorney, Hagens & Berman, Washington, DC, for plaintiff.

Steven D. Gordon and Michael L. Martinez, Attorneys, Holland & Knight, Washington, DC, for USGI, Inc., along with Louis R. Cohen and David P. Donovan, Attorneys, Wilmer, Cutler & Pickering, Washington, DC, and John J. Knapp, Attorney, Powell, Goldstein, Frazer & Murphy, Washington, DC, for defendants.

RICHEY, District Judge.

## INTRODUCTION

Before the Court in the above-entitled case is the defendant USGI, Inc.'s "Motion to Stay Execution of Judgment and to Quash Attachment" and the plaintiff's partial Opposition thereto. In its Motion, USGI requests that the Court (1) approve a rider adding USGI as a principal on the supersedeas bond obtained by USGI's co-defendants in the above-entitled case; (2) enter a stay of execution pending appeal of the judgment against USGI; and (3) quash the government's attachment of $3,813,154.64, representing FHA insurance proceeds that are beneficially owned by a third-party investor. Upon consideration of the pleadings filed by the parties, the entire record herein, the law applicable thereto, and for the reasons detailed below, the Court shall grant USGI's motion.

## BACKGROUND

On May 30, 1995, the Court issued a Memorandum Opinion and Order on the merits of the above-captioned case, holding in favor of the government. On July 18, 1995, the Court

entered an amended judgment in the amount of $6,385,305.68 against USGI and three co-defendants, jointly and severally. The Court, with the government's consent, stayed execution pending appeal of that judgment against co-defendants John C. York and First Commonwealth Savings Bank ("First Commonwealth"), who had posted a supersedeas bond in the full amount of the judgment. The Court further ordered that USGI should have until July 24, 1995 to comply with Federal Rules of Appellate Procedure 7 (by posting a bond to ensure payment of costs on appeal) and 8 (by posting a supersedeas bond).

On July 24, 1995, USGI filed with the Court a Stipulation and Order that it would post a $1,000.00 bond to comply with Rule 7. Upon approval of that Stipulation by the Court, USGI did post the $1,000.00 bond. USGI advised the Court, however, that it did not have sufficient assets to post a bond in the full amount of the judgment, and that it would continue discussions with the government as to whether an accommodation regarding a supersedeas bond could be reached. USGI and the government were unable to reach any agreement for the posting of a bond for less than the entire amount of the judgment.

Since July, USGI has engaged in negotiations with First Commonwealth and Signet Bank to structure an arrangement whereby USGI would be added as a party to the supersedeas bond already posted by John C. York and First Commonwealth. Ultimately, an arrangement was agreed upon whereby USGI could be added to the bond in return for its pledge of certain assets that it owns. A rider to the original bond, adding USGI as a principal, issued on September 27, 1995.

Meanwhile, in July, the government advised USGI that the government intended to execute on the judgment against USGI by pursuing an "administrative offset" with respect to a defaulted Federal Housing Administration ("FHA")-insured, mortgage-backed loan involving a multifamily residential project known as the Lincoln Discovery Park IV Project. USGI previously had submitted, on May 13, 1995, an application to FHA for insurance proceeds on the loan. USGI is the mortgagee-of-record and an issuer of a participation and servicing agreement under which a 100% beneficial interest in the mortgage loan is held by TFINN & Co, a nominee for Lehman Brothers. TFINN is not connected to the litigation underlying the present Motion nor is it otherwise affiliated with USGI. By administrative offset, the government proposed satisfying its judgment against USGI by refusing to pay the FHA insurance claims submitted by USGI on the mortgage loan.

USGI protested the proposed offset, and informed the government that it had no equitable or beneficial interest in the Discovery Park mortgage loan. USGI also informed the government that it was hopeful that it would be added to the supersedeas bond posted by John C. York and First Commonwealth. Nevertheless, on September 12, 1995, FHA notified USGI that it had paid over to the Government National Mortgage Association ("Ginnie Mae") a partial settlement of USGI's insurance claim on the Discovery Park loan in the amount of $3,673,-617.65 to "satisfy the ruling of the U.S. District Court for the District of Columbia calling for an award to Ginnie Mae of $6.3 million." As a result of the final settlement of USGI's insurance claim, FHA paid, in total, $3,813,154.64 to Ginnie Mae.

After it obtained the rider to the supersedeas bond, USGI forwarded the rider to the government and requested that the government consent to the posting of the amended supersedeas bond, reverse the offset, and consent to the entry of a stay pending appeal. On October 2, 1995, the government consented to the posting of the bond and entry of the stay, but refused to reverse the offset.

On October 6, 1995, USGI filed the instant Motion to Stay Execution of Judgment and to Quash Attachment. On October 17, 1995, the York parties filed a response, urging the Court to grant USGI's motion. On October 31, 1995, the government filed a partial Opposition, to which USGI replied on November 7, 1995. In its Opposition, the government consents to the approval of the amended bond and the imposition of a prospective stay of execution. The Court shall, there-

fore, approve of the amended supersedeas bond and shall enter a stay pending appeal of execution of judgment against USGI. The government opposes, however, USGI's Motion to Quash Attachment. Therefore, the Court must herein decide the question whether to grant USGI's Motion to Quash Attachment.

## DISCUSSION

USGI asserts that the Court should quash the government's attachment of the Discovery Park insurance claim proceeds because the government was not authorized by law to effect an offset under the circumstances of this case. USGI further asserts that, assuming the offset was validly undertaken, the fact that USGI is not a beneficial owner of the proceeds attached and the fact that the government's interests are adequately protected by the supersedeas bond justify the relief sought herein. In response, the government asserts that it had the authority to effect an offset and, further, that this Court lacks the authority to quash the resulting attachment of insurance proceeds. The Court will therefore address, first, the government's authority to effect an administrative offset and, second, the Court's authority to quash the resulting attachment of insurance proceeds.

## I. THE GOVERNMENT LACKED THE AUTHORITY TO EFFECT AN OFFSET.

The defendant USGI argues that the offset effected by the government is unauthorized and invalid. Specifically, USGI argues that

the Federal Debt Collection Act of 1982 (the "DCA"), 31 U.S.C. §§ 3701–20, which governs administrative offset, and the HUD's regulations implementing that statute do not authorize the use of an administrative offset when, as here, the United States has a judgment against the debtor.[1] USGI further argues that, in accordance Federal Debt Collection Procedure Act (the "FDCPA"), 28 U.S.C. §§ 3201–06, which governs federal post-judgment remedies, the government cannot attach the insurance proceeds absent the issuance of an appropriate writ of execution or garnishment by the Court.

In response, the government concedes that HUD's offset regulations do not apply to the collection of judgments. Moreover, the government eschews reliance on any statutory authority in support of its action. Rather, the government asserts that it enjoys "comprehensive set-off rights," which are "inherent" and "exist independent of any statutory grant of authority to the executive branch." The government relies solely on its "long-recognized" right at common law to "offset funds to satisfy a judgment." While the Court agrees with the government that the DCA and the FDCPA, which respectively govern federal administrative offset and post-judgment remedies, do not supplant the government's common law rights, the Court does not agree that the government enjoyed the right, at common law, to act as it did with respect to the present case.

### a. The government lacked statutory authority to effect an offset.

 In general, offset or setoff refers to a procedural device by which a party may

1. The Federal Debt Collection Act of 1982 ("DCA"), 31 U.S.C. §§ 3701–20, authorizes the head of an executive or legislative agency to collect a claim from a person by administrative offset. *See* 31 U.S.C. § 3716(a). Such an administrative offset is authorized only after the head of the agency tries to collect the claim under section 3711(a) and gives the debtor notice and other procedural protections. *See id.; cf. Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052 (Fed. Cir.1993) (administrative offset under section 3716 is a last resort which an agency may use after other collection efforts fail) (citing S.Rep. No. 378 at 12, 1982 U.S.C.C.A.N. at 3388 ("The administrative set-off procedure should be used primarily as a last resort action where other administrative steps have been taken to collect

the debt.")). Furthermore, before collecting a claim by administrative offset, the head of the agency must "prescribe regulations on collecting." *See* 31 U.S.C. § 3716(b). The HUD's administrative offset procedures, which govern that agency's collection of debts under 31 U.S.C. § 3716, provide, in relevant part:

> The standards set forth in [these procedures] are the Department's procedures for the collection of money owed to the government by means of administrative offset. These procedures apply to the collection of debts as authorized by common law, by 31 U.S.C. § 3716, or under other statutory authority. *These procedures will not be used ... when the United States has a judgment against the debtor.*
> 24 C.F.R. 17.100(a) (emphasis added).

seek to reduce the amount owed to an opponent party by the value of the opponent's cross-obligations to that party. *See Nashville Lodging Co. v. Resolution Trust Corp.*, 59 F.3d 236, 246 (D.C.Cir.1995). The right of a court to set off one debt or obligation against another is a "principle of long standing in all systems of jurisprudence" and is grounded in the equity power of the court. *Blount v. Windley*, 95 U.S. 173, 176–77, 24 L.Ed. 424 (1877). *See generally* 47 Am. Jur.2d *Judgments* §§ 1029–32 (1995). Furthermore, a judgment in favor of that party against the opponent is evidence of such a debt or obligation to that party on the part of the opponent. *Id.* Also well-established at common law, the United States government, as every other creditor, enjoys the right to claim setoff. *United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1601–02, 91 L.Ed. 2022 (1947).

■ The government has attached the funds at issue here by way of the related concept of "administrative offset," that is, an administrative agency, rather than a court, has offset USGI's debt owed to the government under the judgment against the debt owed by the government under the FHA-insured loan. Administrative offset is statutorily authorized and governed by the DCA. *See* 31 U.S.C. § 3716. However, the parties agree that administrative offset is not statutorily authorized here, since the government has a judgment against USGI. *See* 24 C.F.R. § 17.100(a) (HUD's procedures for administrative offset will not be used when the United States has a judgment against the debtor). The inapplicability of the DCA notwithstanding, the Court must look to the common law, as the DCA was intended to supplement, not displace, the government's pre-existing rights under the common law. *Accord McCall Stock Farms, Inc. v. United States*, 14 F.3d 1562, 1566 (Fed.Cir.1993); *Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed.Cir.1993) (DCA does not apply to restrict the common law doctrines governing contractual offsets).

### b. The government lacked common law authority to effect an offset.

■ In support of the proposition that the government's right to act as it did exists independently of any statutory grant of authority, the government relies principally on a statement by the Supreme Court in *United States v. Munsey Trust Co.*, 332 U.S. 234, 239, 67 S.Ct. 1599, 1602, 91 L.Ed. 2022 (1947), quoting *Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841): "The government has the same right 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" *Munsey* dealt with the Court of Claims' power to balance the debts and credits of the government with those of a government contractor,[2] and with the concomitant power of the Comptroller General to do the same when assessing the contractor's claim at the prejudgment stage, subject to review by the Court of Claims. 332 U.S. at 238–39, 67 S.Ct. at 1601–02. *Gratiot*, relied upon by the *Munsey* Court, involved a defendant who pleaded a set-off in order to reduce or extinguish a claim asserted against it by the United States. 40 U.S. at 368. Thus, in both *Munsey* and *Gratiot*, the allowability of the set-off was an issue to be determined by the court at trial. Neither *Munsey* nor *Gratiot* speaks to the right of the government asserted here, that is, the right of an administrative arm of the government to attach funds it owes a party in order to execute on a judgment previously entered by a court against that party. *Cf. Hines v. United States*, 105 F.2d 85, 89 (D.C.Cir.1939) ("While [a set-off] statute is declaratory of prior existing rights permitting the government to strike a balance between debtor and creditor, it is likewise declaratory of prior existing protective rights of citizens against bureaucratic determinations . . . .").

2. Specifically, *United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947), dealt with the Court of Claims' power under 28 U.S.C. § 250(2) to hear and determine "[a]ll set-offs, counterclaims, claims for damages, whether liquidated or unliquidated, or other demands whatsoever on the part of the Government of the United States against any claimant against the Government in said court . . . ." *Cf.* Fed.R.Civ.P. 13(c) ("A counterclaim may or may not diminish or defeat the recovery sought by the opposing party. It may claim relief exceeding in amount or different in kind from that sought in the pleading of the opposing party.").

The Court has carefully considered all of the additional cases cited by the government and concludes that each is inapposite to the case at hand. *United States v. Tafoya,* 803 F.2d 140 (5th Cir.1986), dealt with a district court's authority to garnish a federal employee's retirement pay until the employee had repaid attorney's fees. *Cecile Industries, Inc. v. Cheney,* 995 F.2d 1052 (Fed.Cir.1993), *McKnight v. United States,* 98 U.S. 179, 25 L.Ed. 115 (1878), and *Barry v. United States,* 229 U.S. 47, 33 S.Ct. 681, 57 L.Ed. 1060 (1913), all dealt with the government's right to offset contract debts against contract payments due to the debtor, subject to judicial review in an action on the contract. Likewise, *United States ex rel. P.J. Keating Co. v. Warren Corp.,* 805 F.2d 449 (1st Cir.1986), involved the government's right to set off an unpaid contract balance against unpaid tax liability of the government contractor, subject to review by the Claims Court. *McCall Stock Farms, Inc. v. United States,* 14 F.3d 1562 (Fed.Cir.1993), and *Doko Farms v. United States,* 956 F.2d 1136 (Fed.Cir.1992), involved administrative offset pursuant to the Debt Collection Act, 31 U.S.C. § 3716. *Housing Authority of the County of King v. Pierce,* 701 F.Supp. 844 (D.D.C.1988), *vacated in part,* 711 F.Supp. 19 (D.D.C.1989), involved recoupment, not offset. In sum, while all the cases support the common sense notion that parties' mutual debts and credits may offset each other, none relied upon by the government, or found by the Court, provide support for the government's attempt to execute on a judgment by way of administrative offset.

c. *Even where offset rights can be asserted, they have not been allowed where the party owing the debt is not the beneficial owner of the value of the offsetting credit.*

Finally, the Court notes that, even under circumstances where offset rights can be validly asserted, offset has not been allowed in circumstances where the party owing the debt is not the beneficial owner of the value of the offsetting credit. *See Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960) (holding that a contracting party may not set off damages caused by breach at the expense of the third-party beneficiary to the contract); *Capuano v. United States,* 955 F.2d 1427, 1430 (11th Cir.1992) ("It goes without saying that neither party may offset moneys in its hands belonging to some other party."); *Richmond, F. & P.R. Co. v. McCarl,* 62 F.2d 203, 206 (D.C.Cir. 1932) ("[That] there is . . . no right of set-off against a trust fund for the trustee's personal debts . . . is the rule between private parties . . . and it is also true that ordinarily the rules of law which apply to the government and to individuals are the same."), *cert. denied,* 288 U.S. 615, 53 S.Ct. 506, 77 L.Ed. 988 (1933). Thus, even if the government had established its common law right to effect administrative offset in satisfaction of a judgment, such a right would not obtain to the funds at issue here, which belong to a third-party beneficiary.

Accordingly, the Court concludes that the government does not enjoy the right at common law to act as it did. Rather, the government's action is in the nature of an execution or garnishment. Both are post-judgment remedies governed by the FDCPA and both require the issuance of appropriate writ by the Court. In sum, the government cannot avoid the terms of the DCA or the FDCPA by asserting it has common law authority for its action when it cannot support its position with case law.

## II. THE COURT HAS JURISDICTION TO QUASH THE ATTACHMENT.

The government argues that, regardless of its authority to effect an administrative offset, this Court now lacks jurisdiction to quash the resulting attachment of insurance proceeds. The Court does not agree.

The Court has continuing jurisdiction to protect and enforce its judgments. *Central of Georgia R.R. Co. v. United States,* 410 F.Supp. 354, 357 (D.D.C.), *aff'd,* 429 U.S. 968, 97 S.Ct. 474, 50 L.Ed.2d 578 (1976); *accord Sheldon v. Munford, Inc.,* 128 F.R.D. 663, 665 (N.D.Ind.1989) ("Although the filing of the notice of appeal divests the district court of jurisdiction over any matters dealing with the merits of the appeal, the district court retains jurisdiction over any issues relating

to the enforcement of the judgment or the supersedeas bond."). In a judgment on the merits in *Central of Georgia,* this Court nullified the Interstate Commerce Commission's ("ICC's") order invalidating a railroads' rate schedules. Pursuant to its power to protect and enforce that judgment, the Court subsequently enjoined the ICC from reopening inquiry into such rate schedules. 410 F.Supp. at 357. The Court relied on the well-supported principle that "the jurisdiction of a court is not exhausted by rendition of judgment, but continues until that judgment shall be satisfied.... Process subsequent to issuance of judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." *Id.* (citing *Riggs v. Johnson County,* 73 U.S. (6 Wall.) 166, 18 L.Ed. 768 (1867)).

Likewise, in *Ascher v. Gutierrez,* 66 F.R.D. 548 (D.D.C.1975), this Court entered a judgment on the merits in favor of the plaintiff and against the defendant. After a notice of appeal was filed, the plaintiff served a writ of attachment against a third-party liability insurance carrier of the defendant. *Id.* at 549. Upon approval of a supersedeas bond subsequently posted, this Court granted a stay for the defendant and quashed the attachment. *Id.* at 550. The Court noted that, in so doing, it left the plaintiff protected by a supersedeas bond in case of affirmance on appeal and it left the third-party protected in case of reversal, should the plaintiff undertake to dissipate the third-party's funds in the meantime. *Id.* at 549.

■ Thus, there is ample authority that the Court may exercise its power over the enforcement of its judgment to quash the government's attachment of funds in the present case. *Ascher,* 66 F.R.D. at 548; *Central of Georgia,* 410 F.Supp. at 354; *accord Sheldon,* 128 F.R.D. at 665 (post-judgment quash of writ of execution). The government's interests are adequately protected

by the existing supersedeas bond and an unrelated party stands to be harmed[3] absent the Court's intervention. Accordingly, in the interest of justice, the Court shall grant USGI's Motion to Quash Attachment.

The Court recognizes the case of *Johns v. Rozet,* 826 F.Supp. 565 (D.D.C.1993), in which this Court declined to grant a retroactive stay of garnishment proceedings that had been commenced before the request for a stay was made. 826 F.Supp. at 568; *accord Secure Eng'g Servs., Ltd. v. International Technology Corp.,* 727 F.Supp. 261 (E.D.Va.1989) (denying motion seeking to dismiss garnishment summons issued prior to application of stay pending appeal); *Larry Santos Prods. v. Joss Org., Inc.,* 682 F.Supp. 905 (E.D.Mich.1988) (same); *Imperial Commodities Corp. v. S.S. Maria Auxiliadora,* 115 F.R.D. 305 (S.D.N.Y.1987) (same). *See also* Jeremy C. Moore et al., *Moore's Federal Practice* ¶ 62.06 (2d ed. 1995). In *Johns,* the defendants failed to post a supersedeas bond for one year after the Court required it to do so and despite being given an extension of time. The defendants posted a bond only after commencement of garnishment proceedings, without an explanation for their long delay. The Court held that it was in the interest of justice to deny a stay under those circumstances. 826 F.Supp. at 567. The present case is easily distinguished from *Johns.*.

First, the procedural posture of the two cases is distinct. *Johns* involved a motion to stay and its retroactive effect on a validly-issued writ of attachment in execution of judgment. The present case involves a motion to quash an unauthorized government action, which action in effect sidesteps the procedural regularities of administrative offset under the DCA and of obtaining an appropriate writ under the FDCPA. Second, unlike the *Johns* case, the present case involves an attachment of money beneficially owned by a third party. The importance of

---

**3.** The government asserts that, absent Court intervention, TFINN's recourse would be, not against the government, but against USGI. USGI asserts, however, that it lacks assets to pay TFINN's claim for $3.6 million and that such a claim would force it into bankruptcy. The result

would be that the government, whose interests are already secured by supersedeas bond, retains TFINN's $3.6 million in insurance proceeds while TFINN, an innocent and unrelated third party, is left without an effective means of recovering those proceeds.

this factual distinction was explicitly noted by the *Johns* Court, when it distinguished the *Johns* case from this Court's prior case of *Ascher. See Johns,* 826 F.Supp. at 568 n. 2.

Finally, unlike in *Johns,* the equities in this case weigh in favor a granting the relief sought by the defendants. *See Lewis v. Benedict Coal Corp.,* 361 U.S. 459, 464, 469, 80 S.Ct. 489, 492–93, 495, 4 L.Ed.2d 442 (1960) (to determine whether an employer may set off a union's liability under contract against the employer's liability to a third-party beneficiary to the contract, Court considered the nature of the interests of the union, the employer, and the beneficiaries, as well as national policy). In *Johns,* the Court was motivated to discourage the practice of judgment debtors who delay filing supersedeas bonds until threatened by a creditor's attempts to execute on the judgment and then benefit from the bond as though it had been filed before execution was attempted. *See Larry Santos,* 682 F.Supp. at 906. The Court recognizes that such a practice subverts the "essential purpose of appeal bonds, which are meant to condition stays of execution upon the providing of security in advance." *Id.* Here, however, a supersedeas bond had been posted by USGI's co-defendants, which protected the government to the full extent of the judgment. Furthermore, in the face of its financial insufficiencies, USGI took reasonable steps to secure a place in the existing supersedeas bond. Despite these facts, the government seized insurance proceeds of a lawful, fully-disclosed buyer of the beneficial interest in a mortgage loan that the government itself insures, harming an unrelated third party.[4] Equity does not favor the government's position under these circumstances.

4. USGI asserts that the approval of the FHA Commissioner was sought and obtained before USGI executed the Discovery Park agreement in 1985, as was required by the HUD's regulations.

## CONCLUSION

For the foregoing reasons, the Court shall grant the defendant USGI's Motion to Stay Execution of Judgment and to Quash Attachment. The court shall issue an Order of even date herewith consistent with the foregoing Memorandum Opinion.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion, issued of even date herewith, it is, by the Court, this 6th day of December, 1995,

ORDERED that USGI's Motion to Stay Execution of Judgment and to Quash Attachment shall be, and hereby is, GRANTED; and it is

FURTHER ORDERED that the attached rider to the supersedeas bond No. 622 55 19 shall be, and hereby is, approved by the Court and that the defendant USGI shall post a bond in the amount of $6,385,305.68 as supersedeas, and that the plaintiffs shall accept as security the supersedeas bond posted by USGI in the full amount of judgment obtained in this action; and it is

FURTHER ORDERED that execution of the judgment against USGI shall be stayed pending appeal; and it is

FURTHER ORDERED that the plaintiffs shall discharge an offset previously effected in execution of the judgment in this case, and that plaintiff Government National Mortgage Association shall return to the Federal Housing Administration $3,813,154.64 in funds offset with respect to the insurance claim for Project No. 136–35651, Lincoln Discovery Park IV.

The government does not contest this assertion.

12

■■■■■■■■

FILED

*CV-93 539-...*

DEC 07 1995

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

<u>RIDER</u>

To be attached to and form a part of Supersedeas Undertaking on Consideration of Post Trial Motions and Appeal Bond No. 622 55 19, dated the 12th day of July, 1995, issued by the FIDELITY AND DEPOSIT COMPANY OF MARYLAND, as Surety, on behalf of First Commonwealth Savings Bank FSB and John C. York, et al, as Principal, in the penal sum of Six Million Three Hundred Eighty Five Thousand Three Hundred Five and 68\100 --------- Dollars ($6,385,305.68), and in favor of United States of America, et al.

In consideration of the premium charged for the attached bond, it is hereby agreed that the attached bond be amended as follows:

It is hereby understood and agreed that USGI, Inc. is to be added as Principal on the Supersedeas Undertaking on Consideration of Post Trial, Motions and Appeal Bond, No. 622 55 19, which is filed in the U.S. District Court for the District of Columbia, and the Principal has requested the Surety to amend the attached bond so as to evidence this change.

NOW, THEREFORE, the Surety hereby amends the bond by adding USGI, Inc. as Principal on the bond.

Provided, However that the attached bond shall be subject to all its agreements, limitations and conditions except as herein expressly modified, and further that the liability of the Surety under the attached bond and the attached bond as amended by this rider shall not be cumulative.

This rider shall become effective as of the 27th day of September, 1995.

Signed, sealed, and dated this 19th day of September, 1995.

USGI, INC.

_____

Attest:

_____ Principal(s) _____

 _____

FIDELITY AND DEPOSIT COMPANY OF MARYLAND

By: _____
 Attorney -in- Fact
 Constance A. M. Staab

ACCEPTED:

_____
U.S. District Court, District of Columbia