Weldon, J.,
delivered the opinion of the court:
The contract which is the foundation of this suit was made on the 25th day of October, 1880, by a duly authorized agent of the United States and the claimant.
It relates to a large amount of work in the improvement of the Schuylkill River, near the city of Philadelphia. By the terms of the agreement the claimant was to dredge from the bottom of that river 108,000 cubic yards of earth by the end of June, 1881, for which he was to receive 34 cents per cubic yard for a part of the work, and 29 cents per cubic yard for the balance. Although the contract was made on the 25th day of October, 1880, and was to be completed by the 30th of June following, nothing was done in the prosecution of the work until about the 1st of May, 1881. In June an extension of time for the completion of the contract, upon the application of the claimant, was made by the proper agent of the United States, and in September, upon a like application, the time for the completion of the agreement was again extended to the 30th of November, 1881.
The officer in charge, and the successor to the officer who made, the agreement on the part of the defendants, in August and September became dissatisfied with the progress of the work, but upon the assurance that more vigorous measures would be adopted made the last extension. On the 5th of October, 1881, the claimant made application to the officer in *173 charge for the payment of the estimate for labor done during the month of September, which the officer refused to pay, upon the ground that the work was not progressing as it should, and that he would retain not only the per cent but the compensation for the work as an indemnity to the defendants for the faithful performance of the agreement. He was notified by the claimant that without payment he was unable to proceed with the work. The officer also refused to assure claimant that he would be paid for the work-he might do in October and November. Whereupon the claimant refused to proceed with the work, and nothing further was done.
This suit was brought to recover the 10 per cent retained, the amount due for work done, and profits for the portion remaining unperformed.
To the recovery of any of those items the defendants interpose the defense that the claimant violated his agreement, and that the failure upon "the part of the claimant to perform his contract in damages is much more than any amount which the plaintiff can legally claim for labor performed by him under the contract. Much evidence was taken for the purpose of showing that the prosecution of the work was materially retarded by the unwarranted interference of the officer in charge; that in consequence of the unauthorized construction of the agreement on the part of the Government the price to the claimant of the work was increased; and that in consequence plaintiff has suffered damages, which should be added to his compensation for the work actually done.
The defendants say: “ It will be conceded that the claimant will have a right to recover his retained percentages and unpaid earnings less such damages to the defendants as were incident to his failure to perform the work.”
In the case of Kennedy (24 C. Cls. R., 122) we held, on a contract of a similar nature, that “ the 10 per cent reserved until the completion of the work, though declared forfeited by the agreement in the case of its annulment, must be treated as a penalty and not as liquidated damages.” The case in 24 Court of Claims follows the doctrine announced in the case of Van Buren v. Diggs (11 How., 361), in which it is said:
“In the refusal of the court to admit the evidence thus tendered we think they decided correctly. It would have been irregular in the court to go out' of the terms of the contract *174 and into tbe consideration of matters wholly extraneous,,and with nothing upon the face of the writing pointing to such matters as proper or necessary to obtain its construction or meaning. The clause of the contract providing for the forfeiture of ten per centum of the amount of the contract price upon a failure to complete the work by a given day can not be properly regarded as an agreement or settlement of liquidated damages. The term forfeiture imports a penalty; it has no necessary or natural connection with the measure or degree of injury which may result from a breach of contract or from an imperfect performance. It implies an absolute infliction, regardless of the nature or extent of the .causes by which it is superinduced.
“Unless, therefore, it shall have been expressly adopted and declared by the parties to be a measure of injury or compensation, it is never taken as such by courts of justice, who leave it to be enforced, where this can be done, in its real character, viz, that of penalty. In a defense like that attempted by the defendant in the Circuit Court, upon the essential justness and fairness of the acts of the parties, a positive immutable penalty could hardly be applied as a fair test of their merits.”
This case differs somewhat from the Kennedy case in this— in the Kennedy case, at the time of the declared forfeiture, the claimant was in full possession of the work, claiming the right to prosecute it; was interrupted in such prosecution by the forfeiture of the contract, and the assumption of possession on the part of the officers and agents of the Government. In this case-the claimant refused to perform the contract because of the failure on the part of the defendants, to keep, as he alleges, their agreement; and the forfeiture was not declared until the 2Gthof May, 1882, nearly eight months after the abandonment of the work on the part of the claimant.
Preliminary to the consideration of the question of the claim for compensation or damages on either side, we must settle the question which of the parties violated the agreement. The findings of the court eliminate all questions of the manner in which the officers in charge of the work for the defendants acted in the performance of their duties, as well as all claim for alleged improprieties upon the part of the claimant in the delay of the work; and the court has by those findings circumscribed the inquiry as to the right of the parties to, the time the work was abandoned, fixing the legal responsibility of each party because of and from that abandonment. At the time the *175 officer in charge refused to pay for what bad been done, or give any assurance of payment of wbat might be done in October and November, 1881, he was not intending to forfeit the contract, but to secure indemnity for the Government against the chances of probable failure upon the part of the contractor.
The law requires the right of forfeiture to be exercised in strict pursuance of the power and in apt time. It can not be founded upon a fault once forgiven, and upon the faith of which forgiveness the derelict party has ventured forward in the performance of his duty.
This controversy, crystallized into its legal essence, involves the question whether the refusal of the defendants to pay in monthly installments gave the claimant the right to abandon the further performance of the contract so as to save all his legal rights in the agreement.
If a party is prevented by the other party from the performance of his agreement he is not only entitled to recover the contract price for what he has done, but he is entitled to be recompensed in whatever profits he might make by the execution of the contract. To him, in both elements, it becomes a chose in action, recognized and protected by the law with the same care it extends over the most valuable form of property.
This is the general principle of the law, sometimes subject to a limitation as to profits.
The claimant was not in the sense of absolute prevention interfered with by the Government. He might have invested his own funds in the enterprise, or he might have borrowed money to perform the agreement.
His condition might have been such, that without monthly . payments it was not practicable for him to proceed with the work. He had a right to assume from the inception of the work that he would be paid according to the requirement of the contract; and the failure of the Government to pay justified him in refusing to proceed on the 5th of October, 1881. Whatever might have been his faults up to that time, the Government having permitted him to proceed, having accepted the performance of the contract during the month of September, and having received the benefit of his labor during that period, it was not in its power to withhold the pay in order that it might be secured against the consequence of a probable or possible failure. The 10 per cent which by the terms *176 of tbe agreement it bad tbe right to retain measures tbe limit of its power to secure indemnity.
In tbe case of Canal Company v. Gordon (6 Wall., 561) tbe Supreme Court says, in substance, as given in tbe syllabus:
“In a contract to make and complete a structure with agreements for monthly payments, a failure to make a payment at tbe time specified is a breach, which justifies the abandonment of tbe work and entitles tbe contractor to recover reasonable compensation for tbe work actually performed. And this notwithstanding a clause in tbe contract providing fox tbe rate of interest which tbe deferred payment shall bear in case of a failure.”
It seems to us that tbe law of this case fully authorized claimant to do what be did upon tbe failure of tbe defendants to pay according to tbe requirement of. tbe contract.
In that view of tbe rights of tbe parties it remains for us to inquire what shall be tbe judgment in this proceeding.
Tbe whole amount of work done by tbe contractor is 50.813 cubic yards; 2,884yardsat34 cents per yard, and47,927 yards at 29 cents per yard, making in tbe aggregate of price $14,879.39, upon which be has been paid tbe sum of $8,961.70. Of said amount of yards 3,404 were redredged by tbe defendants from tbe Miflin basin, where it bad been temporarily deposited by claimant. The redredging was worth the sum of $289.34, which, being added to $8,961.70, makes the sum of $9,251.04, which being deducted from the whole amount of work, leaves a balance of $5,628.30.
This sum represents the value of the work performed at the time the contract was abandoned, after deducting the amount of payment and the sum expended by the defendants in the removal of that portion of the excavation not fully removed by tbe claimant.
A legal question might arise as to the right of the plaintiff to recover more than the value of bis work, inasmuch as he could have proceeded under the agreement by investing his own money in the expense of tbe labor; but as the findings do not show that he would have made any profit on the unfinished work, that question does not arise.
The judgment of the court is that the plaintiff recover the sum of $5,628.30.