Littleton, Judge,
delivered the opinion of the court:
Plaintiff brought this suit to recover $30,858.48 from the defendant for work performed and materials furnished and profit earned to October 28,1932. The amount of $16,078.31 represents the sum due from the defendant for materials furnished and work performed and not paid for in the amount of $10,780, which includes the 10 percent previously retained by the defendant from progress payments made, and $5,298.31, the value of the materials, tools, and equipment on the site which were taken and used by the defendant. The balance of $14,780.17 represents profit claimed to October 28,1932. The basis of the claim is that the defendant breached the contract by refusing to make progress partial payments, as stipulated in Article 16 of the contract, after the payment for the month of August 1932.
May 1,1939, the court entered findings of fact, conclusion of law, and opinion in which the court found and held that defendant had breached the contract; that the plaintiff was justified in stopping the work October 28, 1932 and proceeding no further with the contract and that the defendant did not have the right under Art. 9 or any other provision of the contract, after it had breached the contract, to terminate it for an alleged cause of which it had knowledge long prior to the attempted termination, and which it did not at any time, prior to and for at least a month after the plaintiff had stopped work, consider or assert as justifying termination of the contract. As a matter of fact, as the proof *540 shows, the termination of the contract on the ground asserted — namely, that the contractor was not diligently proceeding with the work or could not complete the contract within the period provided therein, was not justified. Judgment was entered May 1,1939, in favor of plaintiff for $7,380, which represented only the progress partial payment of $2,250, after deduction of 10 percent for work completed in September 1932, and the value of the work performed and completed amounting to $5,130, after deduction of 10 percent, during October 1932.
Plaintiff filed a motion for a new trial May 12, 1939, and the defendant filed a motion for a new trial June 10, 1939. These motions were overruled June 26, 1939. On June 1, 1939, there was instituted a suit against the defendant by the filing of a petition by the liquidator of the National Surety Company, which was the surety on plaintiff’s performance bond to the defendant, to recover $17,955.16, which included the amount of $16,078.31, value of work performed and material furnished, sued for by plaintiff, as well as the amount of $7,380 for which the court had entered judgment for plaintiff. Thereafter the defendant in August 1939, filed a motion for leave to file, accompanied by a second motion for a new trial, on the ground, that the second suit by the liquidator of the National Surety Company, instituted subsequent to the court’s opinion, asserted a right to recover certain of the same sums involved in plaintiff’s suit, and that the court should hold plaintiff’s case open until the second suit was tried and submitted in order that the court might consider both cases and determine who was entitled to the funds in the hands of the defendant. August 24, 1939, the court granted the motion for leave to file the second motion for a new trial in order to hold this case in abeyance until the second suit should be submitted.
The second suit, No. 44690, by the liquidator of the National Surety Company has been tried, submitted, and considered. The defendant’s second motion for a new trial in this case is allowed. The order of June 26, 1939 overruling plaintiff’s motion for a new trial is vacated and set aside. Plaintiff’s motion for a new trial is allowed and the former *541 findings, conclusion of law, and opinion of the court are vacated, set aside, and withdrawn, and new findings, conclusion of law, and opinion are this day filed.
The defendant now states in its brief in the case of Anderson, Liquidator for the National Surety Company, et al. v. United States, No. 44690, as follows:
Defendant admits having in its possession the sum of $17,955.16 as the unpaid balance under the contract in question. Its sole interest is to avoid double liability. The question before the court is the disposition of that fund between the plaintiff in this case [No. 44690] and The Brooklyn & Queens Screen Manufacturing Company, plaintiff in No. 43115.
The facts with reference to the contract between plaintiff and the defendant, the work performed thereon by the plaintiff and the reasons upon and. for which plaintiff ceased work under the contract, and the amount of $16,078.31 owing by the defendant, including the value of small tools and equipment taken over and used by the defendant, are set forth in the findings, which need not be restated here. Upon those facts we are of opinion, upon further consideration, that plaintiff is entitled to recover this sum of $16,078.31. The balance of $1,876.85 in defendant’s hands resulted from work performed by the National Surety Company.
Art. 16 of the contract provided that partial payments would be made to plaintiff by the defendant as the work progressed at the end of each calendar month, or as soon thereafter as practicable, on estimates made and approved by the contracting officer; that in preparing estimates for the purpose of progress payments, materials .delivered on the site and the preparatory work done should be taken into consideration, and that in making such partial payments there should be retained by the Government ten per cent of the estimated amount, until final completion and acceptance of work covered by the contract, with the- proviso that the contracting officer at any time after 50 percent of the work had been completed might make any of the remaining monthly partial payments in full.
Art. 9 of the contract provided that the contracting officer *542 might terminate tbe right of the contractor to proceed with the work under contract if the contractor refused or failed to prosecute the work with such diligence as would insure its completion within the period specified in the contract, or as extended, and not caused by acts of the Government or other excusable causes. This article further provided that if the right of the contractor to proceed was not terminated for the cause mentioned, the contractor should continue with the work, and if the same was not completed within the time specified the contractor would pay to the Government liquidated damages at a specified rate until the work was completed for any delay in completion, not excusable under the terms specified in the article, and for which the contractor was responsible. The right of the contracting officer to terminate the contract under Art. 9 did not arise prior to and did not exist, and was not claimed, on or prior to the date when plaintiff notified the contracting officer on October 26, 1932, that if he did not make the progress payment due and determined by him to be due, by October 28, 1932, the contractor would consider the contract breached by the defendant and that it would stop work and proceed no further with it. The contracting officer continued his refusal to pay. This was a breach of the contract. Plaintiff refused to proceed further with the work. About a month thereafter the defendant attempted under Art. 9 to determine the right of plaintiff to proceed. But this was an after-thought and under the facts is ineffective as a defense to the claim of plaintiff for the amount shown to be due under the contract to October 28, 1932. Plaintiff relied upon and needed the progress payments provided for in Article 16 of the contract. In Pigeon v. United States, 27 C. Cls. 167, 175, this court held:
The law requires the right of forfeiture to be exercised in strict pursuance of the power and in apt time. It can not be founded upon a fault once forgiven, and upon the faith of which forgiveness the derelict party has ventured forward in the performance of his duty. * * *
His condition might have been such, that without monthly payments it was not practicable for bfm to *543 proceed with the work. He had a right to assume from the inception of the work that he would be paid according to the requirement of the contract; and the failure of the Government to pay justified him in refusing to proceed on the 5th of October 1881. Whatever might have been his faults up to that time, the Government having permitted him to proceed, having accepted the performance of the contract during the month of September, and having received the benefit of his labor during that period, it was not in its power to withhold the pay in order that it might be secured against the consequence of a probable or possible failure.
To the same effect are Canal Company v. Gordon, 6 Wall. 561, and Whitbeck, Receiver of L. W. F. Engineering Co. v. United States, 77 C. Cls. 309.
The defendant complied with Art. 16 of the contract by making progress payments as therein provided until the month of September 1932. The voucher for the month of September was duly prepared and approved by the contracting officer and nothing remained to be done except to make payment thereof. Further progress payments were withheld solely because of political reasons. The record is voluminous, but much of the testimony is in our opinion irrelevant and immaterial to the question presented. The issue in the case is confined to the single point of whether the defendant breached the contract by the admitted refusal to make accrued progress payments. An exploration into plaintiff’s past and contemporaneous acts and conduct concerning other contracts and having nothing to do with the performance by plaintiff of the contract to which the defendant was a party, does not aid in the solution of the case. In the trial of the case counsel for the defendant sought to excuse the defendant for not making any progress payments after the August 1932 progress payment on the alleged ground that plaintiff had failed to make sufficient progress toward completion of the contract work under Art. 9 of the contract. But lack of progress was not the reason for the refusal nor was the refusal to pay based upon any provision of the contract between plaintiff and the defendant. It is true that at the time plaintiff stopped work, because the defendant refused to pay it, plaintiff was slightly behind schedule but *544 the contracting officer with full knowledge of all the facts and' circumstances concerning this never at any time deemed the state of plaintiffs progress up to that time sufficient 'to indicate, much less to justify the conclusion, that plaintiff would not or could not complete the work within the contract time. Nor had he asserted a right to terminate the right of the contractor to proceed on that ground.' Moreover, when the plaintiff notified defendant that it would stop work unless progress payments were made as called for by the contract and after plaintiff had actually stopped work, the contracting officer did not claim the right to terminate or cancel the contract for refusal or failure of the contractor to properly prosecute the .work with such diligence as would insure its completion within the contract time. Defendant’s witness testified that .at the time plaintiff stopped work there remained sufficient time to complete the work within the contract period. In these circumstances it is clear that the contracting officer had acquiesced' in the progress which plaintiff had made and was making, and the asserted right to terminate and cancel the contract later stated in the letter to the contractor November 25, 1932, was an afterthought. Up to the time the defendant breached the contract, plaintiff was going forward with the contract work, and while some difficulties intervening had, to some extent, slowed its progress, the record establishes that the contracting officer did not regard plaintiff’s progress to be so much retarded as to warrant termination of the contract. The “delay in completion of the work” mentioned in the contracting officer’s letter of November 25, 1932, was the “delay” after October 28, 1932 when plaintiff stopped work because of defendant’s refusal to make any further progress payments. Of course, defendant could not use that “delay” as a justification for attempted termination after it had breached the contract.
The primary contractual authority of the defendant was dependent upon the observance by it of its obligations as provided in the contract. The law does not allow the defendant by its refusal to observe an obligation ,of a contract to place a contractor in a position where he cannot escape forfeiture of his rights which have accrued prior to any rights of the defendant under any provisions, such as Article *545 9. Plaintiff is entitled to recover the first item of its claim amounting to $16,078.31.
The plaintiff’s proof is not sufficient to justify the allowance of the claimed profit of $14,780.17 to October 28, 1932 when it stopped work because of defendant’s breach.
Judgment will therefore be entered in favor of plaintiff for $16,078.31. It is so ordered.
MaddeN, Judge; JoNes, Judge; GreeN, Judge; and Whalet, Chief Justice, concur.