**H.T. JOHNSON, Acting Secretary of the Navy, Appellant,**

v.

**ALL–STATE CONSTRUCTION, INC., Appellee.**

No. 02–1442.

United States Court of Appeals, Federal Circuit.

May 21, 2003.

Timothy P. McIlmail, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellant. With him on the brief was David M. Cohen, Director.

Barbara G. Werther, Thelen Reid & Priest LLP, of Washington, DC, argued for appellee. Of counsel was Michael Evan Jaffe.

Before RADER, LINN and DYK, Circuit Judges.

DYK, Circuit Judge.

The Secretary of the Navy ("the Navy") appeals the decision of the Armed Services Board of Contract Appeals ("Board") in favor of All–State Construction ("All–State" or "the contractor"). *All–State Constr., Inc.*, ASBCA No. 50,586, 02–1 B.C.A. (CCH) ¶ 31,794, at 157,019–21 (Feb. 21, 2002). This case presents the question of whether the Navy was entitled to withhold progress payments from All–State. The Navy offers two justifications for the withholding: (1) that the government is entitled to withhold progress payments when a default termination is imminent; and (2) that the government is entitled to withhold progress payments pursuant to its common-law right of set-off and also pursuant to section 1.12.2.b. of the contract. We disagree with the Navy's first theory, but agree with the second. Accordingly, we reverse the Board's decision and remand.

## BACKGROUND

On September 30, 1994, the Navy awarded All–State a fixed-price contract valued at $982,000 for the construction of a hazardous waste storage facility. The contract required completion by May 13, 1995. The Navy unilaterally extended the period for completion to September 12, 1995.[1] The extension was based, in part, on the unavailability of the site during a portion of that period. The project was not completed by the extended completion date.

In response to revised construction schedules submitted by All–State, the Navy sent letters dated October 31, 1995, and August 5, 1996, informing All–State that the Navy was forbearing termination of the contract for default while reserving the right to later terminate the contract for default and to assess liquidated damages. The August 5 letter provided a revised completion date of November 14, 1996. However, in a "Show Cause Notice" dated October 4, 1996, the Navy indicated that "[a]t present it is apparent that the work will not be completed by 14 November 1996." (J.A. at 22.) The notice further stated that "[s]ince you have failed ... to make progress toward completing the work by 14 November 1996, the Government is considering terminating the contract under the provisions for default of this contract." *Id.*

On October 9, 1996, All–State submitted an invoice requesting payment of $120,878.67, representing compensation for 34 percent completion of the project less reimbursement previously received. There is no claim on this appeal that the progress payment had not been earned. The Board specifically found that the amount of the claimed progress payment was an "undisputed earned amount for completed work." *All–State*, 02–1 B.C.A. (CCH) at 157,020. However, the claimed progress payment amount was less than the government's pending claim for $180,900 in liquidated damages. *Id.* On October 16, 1996, the contracting officer informed All–State that he was recommending termination of the contract for default. On October 18, 1996, the Navy contracting officer refused payment of the

---

1. The extended completion date is referred to inconsistently in the record as both September 10 and September 12, 1995.

October 9, invoice because "[t]he amount to be retained for liquidated damages exceeds the amount of the invoice." *Id.* The contract was terminated for default on November 26, 1996.

On March 28, 1997, All–State appealed the Navy's default termination of the contract to the Board. The complaint included four counts, all requesting that the termination be treated as a termination for the convenience of the government. The first count alleged that the delay in contract performance (which was the basis of the default termination) was, in fact, the fault of the Navy due to constructive and actual contract changes and differing site conditions. The second count alleged breach of contract on the part of the Navy based on the contract plans and specifications issued by the Navy. The third count alleged that the Navy waived the contract completion date. The final count alleged that the Navy's failure to make progress payments constituted a breach of contract.

All–State moved for summary judgment on all four counts. The Board granted summary judgment in favor of All–State on the fourth count, finding that the Navy breached the contract by retaining 38 percent of the amount that All–State had earned. The Board held that Federal Acquisition Regulation ("FAR") § 52.232–5(d) as incorporated in the contract limited the permissible retention of progress payments to 10 percent of the amount earned.[2] The Board concluded that the contract was terminated for the convenience of the Navy and that All–State's obligation to perform was discharged. The Board stated "[i]n view of this result, we need not address the issues in the other counts." *All–State,* 02–1 B.C.A. (CCH) at 157,021. The Navy timely appealed.

## DISCUSSION

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(b) and 41 U.S.C. § 607(g)(1)(B). The standard of review applied to Board decisions is prescribed by statute:

[T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b) (2000). The sole issue on appeal is whether the Navy's failure to make the progress payment operated as a breach of contract because the amount withheld was more than ten percent of the earned amount.

### I

■ The Navy first argues that it permissibly withheld the progress payment because it was considering terminating the contract for default, and default termination was imminent. Thus, the Navy's position is that, when the government is about to declare a default termination, it is discharged from its contractual obligation to make progress payments because of the possibility that the contractor owes breach damages to the government. We conclude that, in the absence of a contract clause permitting such action, the Navy had no such authority.

The Navy does not cite any provision of the contract or regulation as authorizing it to withhold the progress payment in anticipation of a default determination. In-

---

**2.** The year of the FAR provisions as cited in this opinion refer either to the year of the regulation as incorporated in the contract or the year of the contract.

stead, the Navy argues that "[t]he purpose of progress payments is to provide the contractor with the funds that he needs to continue performance," a purpose that was vitiated by the impending default. (Appellant's Br. at 7–8.) The FAR, as incorporated into the contract, expressly defines the government's contract termination rights for default. 48 C.F.R. § 52.249–10 (1984). There is no regulation, however, permitting the government to withhold progress payments when the government is considering declaring a default termination. The government has no right to withhold progress payments simply because it is considering a termination for default, except to the extent of the government's contractual ten percent retainage rights.

This approach is confirmed by *Pigeon v. United States*, 27 Ct.Cl. 167 (1892). There, the contracting officer withheld progress payments "upon the ground that the work was not progressing as it should, and that he would retain not only the [ten] per cent but the compensation for the work as an indemnity to the defendants for the faithful performance of the agreement." *Id.* at 173. The court held that the contracting officer's action to "secure indemnity for the Government against the chances of probable failure upon the part of the contractor" was improper and breached the contract. *Id.* at 175 ("it was not in [the government's] power to withhold the pay in order that it might be secured against the consequences of a probable or possible failure"); *see also Brooklyn & Queens Screen Mfg. Co. v. United States*, 97 Ct.Cl. 532, 533–36 (1942).

## II

The government alternatively argues that it was entitled to withhold progress payments by virtue of its common law right of set-off, which it urges is specifical-ly recognized in the language of this contract. The seminal case recognizing the government's set-off rights is the Supreme Court's decision in *United States v. Munsey Trust Co.*, 332 U.S. 234, 108 Ct.Cl. 765, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947). In *Munsey*, the government had retained percentages of the progress payments due to the contractor on six contracts. *Id.* at 237, 67 S.Ct. 1599. The contractor defaulted on a subsequent contract, resulting in damages to the government, which the government set off against the retained progress payments. *Id.* The Court held that "[t]he government has the same right [of set-off] 'which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him.'" *Id.* at 239, 67 S.Ct. 1599.

■ This court and our predecessor court have repeatedly recognized the government's right of set-off. *Applied Cos. v. United States*, 144 F.3d 1470, 1475 (Fed. Cir.1998); *Bank of Am. Nat'l Trust & Sav. Ass'n v. United States*, 23 F.3d 380, 384 (Fed.Cir.1994); *Cecile Indus., Inc. v. Cheney*, 995 F.2d 1052, 1055 (Fed.Cir.1993); *Project Map, Inc. v. United States*, 203 Ct.Cl. 52, 486 F.2d 1375, 1377 (1973); *William Green Constr. Co. v. United States*, 201 Ct.Cl. 616, 477 F.2d 930, 936 (1973); *Aetna Ins. Co. v. United States*, 197 Ct.Cl. 713, 456 F.2d 773, 775 (1972). The set-off right applies to government claims both under other contracts, *see William Green*, 477 F.2d at 936, and under the same contract, *Cecile*, 995 F.2d at 1054.

Of necessity, the contractor here recognizes that the government has broad set-off rights, but makes a number of arguments as to why the government's set-off rights did not justify the withholding under the circumstances in this case.

First, the contractor argues that the government's set-off right is defeated by the FAR provision concerning progress payments ("the Retainage Clause"), which was incorporated in All–State's contract with the Navy. In other words, the contractor argues that the government surrendered its set-off right. The Board agreed, stating that if the contract is "interpreted as permitting the retention, before substantial completion of the work, of liquidated delay damages in excess of the express limit in the FAR [Retainage] clause, it is in violation of the FAR clause which is mandated by regulation, and the Government cannot by law benefit from it." *All–State,* 02–1 B.C.A. (CCH) at 157,-020–21 (citing *Beta Sys., Inc. v. United States,* 838 F.2d 1179, 1185 (Fed.Cir.1988)). The Retainage Clause provides:

> If the Contracting Officer finds that satisfactory progress was achieved during any period for which a progress payment is to be made, the Contracting Officer shall authorize payment to be made in full. *However, if satisfactory progress has not been made, the Contracting Officer may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved.* When the work is substantially complete, the Contracting Officer may retain from previously withheld funds and future progress payments that amount the Contracting Officer considers adequate for protection of the Government and shall release to the Contractor all the remaining withheld funds. Also, on completion and acceptance of each separate building, public work, or other division of the contract, for which the price is stated separately in the contract, payment shall be made for the completed work without retention of a percentage.

48 C.F.R. § 52.232–5(e) (1989) (emphasis added). We do not agree that the right of set-off was limited by this provision.

Both the Supreme Court and this court have made clear that the government's set-off right can be defeated only by explicit language. As we stated in *Applied:* "it is well settled that the government retains its setoff right *unless there is some explicit statutory or contractual provision that bars its exercise.*" 144 F.3d at 1476 (emphasis added) (citing *Munsey Trust,* 332 U.S. at 239, 67 S.Ct. 1599; *Marre v. United States,* 117 F.3d 297, 302 (5th Cir. 1997)); *see also Cecile,* 995 F.2d at 1055. In *Applied,* the contractor argued that the government's set-off right was limited by a settlement agreement between the contractor and the government pursuant to FAR § 49.109–1. 144 F.3d at 1475. The FAR section provided that the settlement set-off would cover "any setoffs that the Government has against the contractor [under] the terminated contract." 48 C.F.R. § 49.109–1. The court held that the agreement did not limit the government's right to set off obligations owed under other contracts because it did not explicitly bar such set-offs. *Applied,* 144 F.3d at 1476. In *Cecile,* the contractor argued that the Debt Collection Act, 31 U.S.C. § 3716, required the government to follow specific procedures when performing an administrative set-off, which the contractor argued were not properly followed. 995 F.2d at 1054–55. The court disagreed, holding that the DCA did not alter the government's common law set-off right, but rather made available to the government additional debt recovery procedures. *Id.* at 1055. The court reasoned: *"without an evident statutory mandate to the contrary,* this court must avoid reading [a statute] to restrict the common law right of contractual offset." *Id.* (emphasis added).

The Retainage Clause here does not contain explicit language defeating the government's common law set-off right, but rather narrowly limits the scope of the government's retainage rights "if satisfactory progress has not been made ... [to] a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved." 48 C.F.R. § 52.232–5(e) (1989). One purpose of contract "retainage is [as] an incentive to complete the contract." *Fireman's Fund Ins. Co. v. United States,* 909 F.2d 495, 498 (Fed.Cir.1990). Retainage rights also serve to protect the interests of the government against potential defaults by the contractor. *Nat'l Sur. Corp. v. United States,* 118 F.3d 1542, 1545 (Fed.Cir.1997); *Pigeon,* 27 Ct.Cl. at 175–76 (noting that retainage is used as indemnity by the government). No proof is required that the contractor has committed a breach of the contract, as the withholding is permitted to secure against possible future breaches or undiscovered prior breaches.

■ Common law set-off rights serve an entirely different purpose, "to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *Gratiot v. United States,* 40 U.S. 336, 370, 15 Pet. 336, 10 L.Ed. 759 (1841). The set-off right is not an indemnity against a possible future breach, but rather offsets a current payable debt. Section 32.611 of the FAR (though not incorporated in this contract), in fact, recognizes the government's right to set off and makes no reference to the ten percent limit on retainage. 48 C.F.R. § 32.611 (1994).[3] The very existence of § 32.611

thus demonstrates that the FAR provision at issue here, 48 C.F.R. § 52.232–5, was not designed to limit the government's set-off right.

While not determinative, we note also that the contract expressly limited the government's obligation to pay in clause 1.12.2 ("the Set–Off Clause"), which provides:

> The obligation of the Government to make any of the payments required under any of the provisions of this contract shall, in the discretion of the Officer in Charge of Construction, be *subject to ... [a]ny claims which the Government may have against the Contractor under or in connection with this contract.*

(J.A. at 19) (emphasis added). This provision also does not limit the government's right to set off only to funds the government has retained under FAR § 52.232–5(d). Instead, it refers to "[a]ny claims which the Government may have against the Contractor."

■ The contractor also argues that the government did not properly exercise its set-off right. All–State's argument regarding the procedure that the government must follow when effectuating a set-off is based on *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 116 S.Ct. 286, 133 L.Ed.2d 258 (1995), in which the Supreme Court stated that "a setoff has not occurred until three steps have been taken: (i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff." *Id.* at 19, 116 S.Ct. 286. The contracting officer here took all of these actions. In with-

---

**3.** FAR § 32.611, entitled "Routine setoff" provides:

> If a disbursing officer is the responsible official for collection of a contract debt, or is notified of the debt by the responsible official and has contractor invoices on hand for payment, the disbursing officer shall

make an appropriate setoff. The disbursing officer shall give the contractor an explanation of the setoff. To the extent that the setoff reduces the debt, the explanation shall replace the demand prescribed in 32.610.

48 C.F.R. § 32.611 (1983).

holding the progress payment, the government stated that it would not make the progress payment because "[t]he amount to be retained for liquidated damages exceeds the amount of the invoice." (J.A. at 27.) This notice satisfied each of the three requirements. It reflected "a decision to effectuate a setoff"; it reflected an act to accomplish the set-off; and it recorded the set-off. This case is quite unlike *Citizens Bank*, where the party purporting to perform the set-off, in fact, did not seek to "permanently and absolutely" retain the funds. 516 U.S. at 19, 116 S.Ct. 286. Instead, the party sought only to temporarily retain the funds. The government here did seek to permanently and absolutely retain the funds in settlement of the liquidated damages owed it.

 The contractor argues that the set-off cannot precede a "final" decision by the contracting officer, meaning apparently a final decision to terminate the contract. In fact, the FAR provisions incorporated in the contract clearly contemplate a claim for liquidated damages either at the time of the default termination or earlier. Under FAR § 49.402–7, "[i]f a contract is terminated for default *or if a course of action in lieu of termination for default is followed* (see 49.402–4), the contracting officer shall promptly ascertain and make demand for any liquidated damages to which the Government is entitled under the contract." 48 C.F.R. § 49.402–7(a) (1994) (emphasis added). The allowable courses of action under FAR § 49.402–4 included "[p]ermit[ing] the contractor, the surety, or the guarantor, to continue performance of the contract under a revised delivery schedule." *Id.* § 49.402–4(a). Thus, the contracting officer's request for liquidated damages using the set-off procedure was proper, whether or not a final default termination notice had issued.

Similarly, the contractor argues that the withholding of the progress payment was improper because the contractor was still performing under the contract. According to the contractor, the government breached "at the moment the Government assert[ed] setoff threats against progress payments on a contract on which the contractor is still progressing, despite the fact that the contractor may itself [have been] in default on [the] contract." (Appellee's Br. at 43–44.) For this proposition the contractor cites *William Green*, 477 F.2d at 938. However, the government's breach in *William Green* was predicated on the fact that "[t]here were ... no liquidated damages and no excess construction costs which could properly be offset against the [contracts]." *Id.* at 937. The government's refusal to make the progress payments in that case was therefore improper. *Id.* at 938. Here, by contrast, no such determination has been made.

 Thus, the Navy under the contract had the right to set off any amounts due as liquidated damages. The exercise of that right cannot breach the contract, and cannot be the basis for defeating the default termination, or converting the default termination to a termination for convenience.

## CONCLUSION

For the foregoing reasons, the judgment of the Board is reversed and the matter is remanded for further proceedings consistent with this decision.

*REVERSED AND REMANDED.*

## COSTS

No costs.