**RIG MASTERS, INCORPORATED,**
Appellant,

v.

**Les BROWNLEE, Acting Secretary
of the Army, Appellee.**

No. 03–1460.

United States Court of Appeals,
Federal Circuit.

DECIDED: April 8, 2004.

Rehearing Denied May 11, 2004.

Cyrus E. Phillips, IV, Washington, DC, for Appellant.

Douglas K. Mickle, Bryant G. Snee, David M. Cohen, Harold D. Lester, Jr., Department of Justice, Washington, DC, Lanny Robinson, U.S. Army Corps of Engineers, Vicksburg, MI, for Appellee.

Before GAJARSA, LINN, and PROST, Circuit Judges.

LINN, Circuit Judge.

Rig Masters, Inc. ("Rig Masters") appeals from a final decision of the Armed Services Board of Contract Appeals ("Board"), denying its claim for cost savings under an approved Value Engineering Change Proposal ("VECP") for Contract No. DACW38–93–C–0010 ("the contract"). *In re Rig Masters, Inc.*, ASBCA Nos. 52891 and 54047, 2003 WL 21489875 (A.S.B.C.A. June 18, 2003). Because the Board's decision was supported by substantial evidence, we *affirm*.

## BACKGROUND

Rig Masters was awarded the contract by the U.S. Army Corps of Engineers ("Corps") to deliver support services as necessary to inspect, operate, maintain, repair, and secure the Tensas–Cocodrie Pumping Plant ("the plant") and surrounding areas in Louisiana from February 1993 to February 1998. The plant was designed to discharge excess water from a drainage area to the Black River via gravity or pumping when the Black River was at low stages or high stages, respectively.

Under the contract, during non-pumping periods, Rig Masters was required to provide Level 1 support services at the plant from 8 A.M. to 4 P.M. Additionally, Rig Masters was required to provide 24–hour Level 2 support services under two conditions: when the water levels reached specified elevations as provided in the plant's

Operation and Maintenance ("O & M") manual or at the discretion of the Corps via delivery order.

The contract also provided a "Value Engineering" provision, which specified that the contractor was to share in any "net acquisition savings" realized from accepted VECPs. In February 1994, Rig Masters conveyed an initial VECP to the Corps suggesting the O & M manual be modified to allow the vacuum breaker valves on the plant water pumps to be closed when the pool-to-pool water level differentials were 2 feet, rather than the specified 5 feet, thus resulting in "a more efficient and cost saving operation" at the plant. Rig Masters' VECP was subsequently found to have merit, and the parties agreed that the vacuum breaker valves would be closed under certain conditions, including when the water level at the Lower Gravity Drainage Structure ("LGDS") was 35 feet and rising and the pool-to-pool differential was 2.5 feet.

On August 8, 1995, Rig Masters presented a "formal request for payment" for $37,803.67 in reduced Level 2 support requirements over a one-year period, which was amended to reflect a 3-year cost savings of $113,411.01 on August 24, 1995. No supporting data was provided for determining the reduction in Level 2 support services. In April 2000, the Contracting Officer denied Rig Masters' claim in its entirety. Rig Masters appealed to the Board. In December 2002, while the appeal was pending, a successor Contracting Officer held reduced Level 2 support services to be "instant contract savings" and found Rig Masters eligible to share in cost savings for reduced Level 2 support services on 2 days, namely, February 13–14, 1997.

On appeal to the Board, the parties disputed eligibility for savings in Level 2 support services under the VECP on 42 days, namely: December 17–22, 1996; February 10 and 12–14, 1997; May 21–26, 1997; January 9–15, 1998; and February 7–8 and 10–26, 1998. Rig Masters argued it was entitled to recovery for all 42 days while the Corps argued that the VECP resulted in reduced Level 2 support services for only the 2 days for which Rig Masters was compensated. The Board found that Rig Masters failed to prove by a preponderance of the evidence that revised plant operations pursuant to Rig Masters' VECP reduced Level 2 support services and resulted in a cost savings for the additional 40 days.

Rig Masters appealed. We have jurisdiction from a final decision of the Board of Contract Appeals under 28 U.S.C. § 1295(a)(10).

## ANALYSIS

The standard of review applied to a Board of Contract Appeals decision is prescribed by statute. *See Johnson v. All-State Constr., Inc.,* 329 F.3d 848, 851 (Fed. Cir.2003).

> [T]he decision of the agency board on any question of law shall not be final or conclusive, but the decision on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious, or so grossly erroneous as to necessarily imply bad faith, or if such decision is not supported by substantial evidence.

41 U.S.C. § 609(b) (2000). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Propellex Corp. v. Brownlee,* 342 F.3d 1335, 1338 (Fed.Cir. 2003).

Rig Masters appeals the Board's denial of a cost savings award pursuant to the VECP for reduced Level 2 support ser-

vices for the additional 40 days on which it claimed that a savings was produced. Rig Masters argues that the Board's decision is not supported by substantial evidence because the Board failed to resolve discrepancies between the data in the Declaration of Charles D. Little presented by the Corps, which the Board relied upon, and the water level readings contained in Rig Masters' "Daily Operations Logs" ("logs") on the corresponding days. Rig Masters contends that the data in its logs establish its entitlement to cost savings from reduced Level 2 support services on the additional 40 days.

Under the value engineering clause in its contract, Rig Masters is able to share in instant contract savings provided they result from changed operations pursuant to the VECP. Under the contract, instant contract savings are equal to the "instant unit cost reduction multiplied by the instant unit cost units affected by the VECP" less the contractors' development and implementation costs. Since the contract at issue is a service contract, the instant unit cost reduction is the hourly rate for the services. Thus, Rig Masters would be entitled to share in any reduction in Level 2 support services that it can establish resulted from a change in operations under the VECP.

The central issue before us is whether there was substantial evidence to support the Board's conclusion that Rig Masters was only entitled to claim cost savings for reduced Level 2 support services under the VECP for 2 days, instead of the 42 days it claimed. Having carefully reviewed the record, we conclude that the Board's decision was supported by substantial evidence and should be affirmed.

Rig Masters fails to show any nexus between the additional 40 days of alleged cost savings and the reduced Level 2 support services it must show to prevail on its claim. The Contracting Officer correctly pointed out that, under the contract, the provision of Level 2 support services is at the discretion of the Government. Rig Masters failed to show that there were actually reduced Level 2 support services on the additional 40 days, because the Government could have required Level 2 support services even if the VECP stated Level 2 support services were unnecessary. Further, Rig Masters' calculation that there was a 30% increase in pump output and thus a $113,411.01 savings in Level 2 support services was conclusory and not supported by any reasoning at all, let alone persuasive reasoning. Thus, the Board was correct in determining that the declaration of Rig Masters' president, Richard Young, was unpersuasive.

Both before the Board and on appeal to this court, Rig Masters claimed that it was entitled to contract cost savings when the water level at the LGDS was 35 feet and rising. Rig Masters claims there are discrepancies between its daily logs and those relied on by the Government's expert, Charles D. Little, and thus its more-detailed records should be considered (and accepted). Rig Masters further asserted to the Board that the Board only needed to decide the number of days of contract cost savings, because the Corps could readily determine the amount of cost savings on those days, as it did for the two days where cost savings were found. Rig Masters misses the critical issue: whether reduced Level 2 support services were actually provided on the 40 days it claims savings were realized.

Rig Masters' logs reveal no apparent reduction in Level 2 support services on the 40 days in question. Except for February 8, 1998, the logs reveal that on all of the additional 40 days, Rig Masters was providing two or three 8-hour shifts of Level 2 support services. If there were

cost savings stemming from reduced Level 2 support services, the logs should reveal that only Level 1 support services, comprising a single 8–hour shift, were required on those days. Thus, Rig Masters' own logs fail to establish that changed pumping operations under the VECP resulted in a reduction in Level 2 support services at the plant and hence any cost savings to the Corps. There is no basis for disturbing the Board's conclusion that Rig Masters failed to establish that the increased pump efficiency resulting from the VECP reduced the duration and extent of Level 2 support services on the additional 40 days.

## CONCLUSION

Because substantial evidence supports the Board's conclusion that Rig Masters was not entitled to the recovery of cost savings under the VECP for the additional 40 days, we affirm.