ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- | ) |
| | ) |
| Aerospace Facilities Group, Inc. | )   ASBCA No. 61026 |
| | ) |
| Under Contract No. W912NW-12-C-0035 | ) |

APPEARANCES FOR THE APPELLANT:       Theodore P. Watson, Esq.
                                       Watson and Associates LLC
                                       Washington, DC

                                      Wojciech Z. Kornacki, Esq.
                                       Watson & Associates LLC
                                       Denver, CO

APPEARANCES FOR THE GOVERNMENT:       Scott N. Flesch, Esq.
                                       Army Chief Trial Attorney
                                      Robert B. Neill, Esq.
                                      MAJ Mark T. Robinson, JA
                                       Trial Attorneys

OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

Appellant, Aerospace Facilities Group, Inc. (AFG), appeals from the termination of its contract to deliver "paint booth equipment" (for the painting of helicopters) to the Corpus Christi Army Depot; AFG also seeks breach damages (app. br. at 1, 32). Only entitlement is before us (tr. 1/7).

STATEMENT OF FACTS

In *Aerospace Facilities Grp., Inc.*, ASBCA No. 61026, 18-1 BCA ¶ 37,105 at 180,602-03, we recited facts that we incorporate here by reference. Familiarity with that opinion is presumed. In addition, the contract incorporates by reference Federal Acquisition Regulation (FAR) 52.249-1, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED PRICE) (SHORT FORM) (APR 1984), and FAR 52.249-8, DEFAULT (FIXED-PRICE SUPPLY & SERVICE) (APR 1984) (R4, tab 1 at 68). AFG contracted with Global Finishing Solutions (GFS) to obtain the paint booth equipment required by the contract (*see* app. br. 1, 6 ¶ 14). On November 9, 2015, Contracting Officer June Gowen issued the following unilateral modification, withholding payment of $342,600 under the contract at issue here until

AFG provided four pieces of equipment called "ergo test stands" due under a different contract between AFG and the government (Contract No. W912NW-12-C-0031), which were also meant for the Corpus Christi Army Depot:

> 1. BACKGROUND: Aerospace Facilities Group has failed to deliver and install four ergo test stands called for in the specifications of Contract No. W912NW-12-C-0031.
>
> 2. ACTIONS TAKEN: Because of this, funding will be withheld from another Aerospace Facilities Group contract, W912NW-12-C-0035 until such time as Aerospace Facilities Group delivers and installs the four ergo test stands at the Corpus Christi Army Depot. The amount of $342,600.00 has been moved out of CLIN 0001AA into new CLIN 0002. This amount will be withheld from payments in contract W912NW-12-C-0035 until such time as Aerospace Facilities Group delivers and installs the four ergo test stands at the Corpus Christi Amount Depot [under Contract No. W912NW-12-C-0031].

R4, tab 35 at 1 (alteration added)

On January 28, 2016, Ms. Gowen issued a unilateral modification that purports to incorporate into the contract FAR 52.212-4, CONTRACT TERMS AND CONDITIONS – COMMERCIAL ITEMS (MAY 2015) (R4, tab 49 at 1). On March 30, 2016, the parties modified the contract to extend the period of performance through June 28, 2016 (*see* R4, tab 92 at 1-3). That modification also provides:

> Installation payments were erroneously paid to contractor prior to installation efforts being performed. All funding prematurely and erroneously paid on CLINS 0001AF in the amount of $772,550.48 and 0001AS in the amount of $837,298.93, totaling $1,609,849.41, shall be returned to the Government by AFG via credits to all future invoices until paid in full.

(*Id.* at 3)

AFG did not deliver the paint booth equipment to the government by the contract's June 28, 2016 deadline; indeed, AFG never delivered any of the paint booth equipment required by the contract (*see* app. br. at 1; tr. 1/31, 193). On July 8, 2016, Contracting Officer Peggy Echols issued to AFG an Order to Show Cause, informing AFG that the government was considering terminating the contract for default (R4,

2

tab 133). On July 27, 2016, AFG responded, admitting that it did not deliver the paint booth equipment on time--even though, according to AFG, the paint booth equipment had been manufactured and was in AFG's storage--because, AFG said, the government had not made a $342,600 payment to AFG:

> All of the equipment for contract (W912NW-12-C-0035) has been manufactured and in our storage since June 2015 awaiting the government to complete the ACCF building where the equipment is going to be installed. . . . The equipment delivery date (June 2016) given to AFG by the government could not be met by [sic] due to the fact that the government held up the contractual agreed payments of $304,406.32, so in turn AFG could not fulfill our contractual agreements with our suppliers.

(R4, tab 157 at 4) AFG admitted to its "failure to perform on this contact [sic]," and explained that, in its view, that failure was "due to the government issui[ng a h]old on our contractual payment schedule set up for this contract" (*id.* at 3-4 (referencing "AFG failure to perform on this contract")). Through counsel, AFG reaffirms that admission, stating that "the cause of the non-delivery" was AFG's "subcontractor not getting paid" (app. br. at 14), and that AFG "did not pay their subcontractors" (tr. 1/79). Indeed, in its post-hearing brief, AFG states:

> [AFG] also explained [to the government] that it could not meet the delivery date imposed by [the government] because [the government] did not make contractual payments to [AFG] which prevented [AFG] from making payments to the sub-contractor.

(App. br. at 11 ¶ 53) (alterations added)

However, AFG *could have* paid GSF for the paint booth equipment, from corporate funds. During the hearing of this appeal, AFG's owner, Dennis Robinson, read the following from his deposition:

> Question: "But you could have paid Global Finishing Solutions with the money you had in the corporate account. Correct?" Answer: "Yes."

(Tr. 2/135, 171) AFG simply decided not to pay GFS because, in AFG's view, the government owed AFG money:

3

Question: Is the reason why you didn't pay Global Finishing Solutions because you believed that the Government owed you money on those additional invoices you submitted?

[Mr. Robinson] Yes.

. . .

Question: So [the Order to Show Cause is] dated July 8, 2016. And so by that date, the final delivery date established in modification 6 had passed. Did you still not intend to deliver the paint booths until you received the payments that you believed were owed under the contract to you in order to pay Global Finishing Solutions?

[Mr. Robinson] That is correct.

(*Id.* at 171, 193) Additionally, Mr. Robinson testified that AFG could have paid its supplier from corporate funds, but chose not to do so because "[AFG] wasn't going to be the bank for the government" (*id.* at 172, 216).

Finally, the government was ready to receive the paint booth equipment when it was due: on this point, on May 31, 2016, Ms. Echols wrote to AFG that "the government has identified storage space for the remaining paint booth equipment" (R4, tab 114). In addition, the judge who presided over the hearing elicited the following answer to the following question:

JUDGE YOUNG: So does this mean that, even though there was a concern about storage costs, the Government was ready to receive equipment?

[Ms. Gowen]: Yes.

(Tr. 1/212)

On August 4, 2016, Ms. Echols issued a modification terminating the contract for default (using the term "Termination for Cause"), citing FAR 52.212-4(m) and stating that AFG had "failed to deliver in accordance with the terms of the contract" (R4, tab 158 at 1-2; *see also* tab 159 (cover letter to AFG)).

4

*Termination for default*

The government says that FAR 52.212-4 is incorporated into the contract by the *Christian* doctrine (gov't br. at 29). We need not address that issue, nor whether Ms. Gowen's unilateral modification, purporting to incorporate that clause into the contract, is a nullity. The contract incorporates FAR 52.249-8, Default, which provides, at paragraph (a)(1):

> The Government may . . . by written notice of default to the Contractor, terminate this contract in whole or in part if the Contractor fails to—

> (i) Deliver the supplies or to perform the services within the time specified in this contract or any extension.

FAR 52.249-8, itself, provides the contractual authority to terminate the contract under the circumstances of this case. *See CKC Sys., Inc.*, ASBCA No. 61025, 19-1 BCA ¶ 37,385 at 181,749-50.

The government says that the termination is justified because AFG failed to deliver the paint booth equipment by the contract delivery date (gov't br. at 1). We agree. Because AFG did not deliver the paint booth equipment by the contract completion date, AFG defaulted; consequently, the termination for default is justified. *See Truckla Services, Inc.*, ASBCA Nos. 57564, 57752, 17-1 BCA ¶ 36,638 at 178,445.

Now it's up to AFG to demonstrate that its default is excused. *HK&S Constr. Holding Corp.*, ASBCA No. 60164, 19-1 BCA ¶ 37,268 at 181,352. AFG says that the government caused the default (including in bad faith) by withholding a $342,600 payment to AFG that AFG says it needed to pay GFS for the paint booth equipment (app. br. at 1, 12-17, 23-27). We conclude otherwise: AFG is responsible for the default by not paying GFS for the paint booth equipment, even though it could have done so out of its corporate funds.[*] *Cf. Puma Energy Honduras, S.A. De C.V.*, ASBCA No. 61966, 20-1 BCA ¶ 37,507 (granting summary judgment; finding no

---

[*] In view of this conclusion, we need not decide whether, as AFG's July 27, 2016 letter ostensibly indicates, AFG actually had the paint booth equipment in *its* storage, available for AFG to deliver to the government notwithstanding any payment owed by the government to AFG (R4, tab 157 at 4 ("All of the equipment . . . has been manufactured and in our storage since June 2015")).

dispute that contractor's internal business practices, as well as its own invoicing errors, were the reason it failed to perform). In addition, the parties modified the contract to provide for the return to the government of up to $1,609,849.41 paid to AFG "via credits to all future invoices until paid in full," expressly providing the government a contractual right to set off money owed to AFG against money that AFG owed to the government. Moreover, the government always had the same, common-law right "which belongs to every creditor, to apply the unappropriated moneys of his debtor, in his hands, in extinguishment of the debts due to him." *United States v. Munsey Tr. Co. of Washington, D.C.*, 332 U.S. 234, 239 (1947); *accord Johnson v. All-State Constr., Inc.*, 329 F.3d 848, 852 (Fed. Cir. 2003) ("The set-off right applies to government claims both under other contracts . . . and under the same contract."); *Raytheon Co., Space & Airborne Sys.*, ASBCA No. 57801, 15-1 BCA ¶ 36,024 at 175,952 ("the government could use Contract II to offset debts that arose on other contracts").

AFG also says that it directed GFS to deliver the paint booth equipment, but that GFS refused (app. br. at 16-17, 31); but, if that is so, AFG is still responsible for the failure to deliver the paint booth equipment, because a contractor is responsible for the unexplained failures of its subcontractors. *See Williamsburg Drapery Co. v. United States*, 369 F.2d 729, 742 (Ct. Cl. 1966); *United Schools of America, Inc.*, ASBCA No. 38628, 90-3 BCA ¶ 23,199 at 116,426. AFG also appears to blame government communications with GFS for AFG's failure to deliver the paint booth equipment (app. br. at 16-17); but we find AFG's admissions that the default was the result of non-payment to GFS conclusive on this point. In addition, AFG appears to say that the government acted in bad faith to remove AFG so that it could contract with GFS (app. br. at 23-27), but we find none of the clear and convincing evidence that government officials acted from personal animus with the specific intent to injure AFG that would be necessary for AFG to overcome the presumption that the government officials who administered the paint booth equipment contract acted in good faith. *See Watts Constructors*, 19 BCA ¶ 37,382 at 181,728; *Road and Highway Builders, LLC v. United States*, 702 F.3d 1365, 1368 (Fed. Cir. 2012); *Am-Pro Protective Agency, Inc. v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002); *Grow Life Gen. Trading, LLC*, ASBCA No. 60938 *et al.*, 19-1 BCA ¶ 37,361 at 181,676; *Puget Sound Envtl. Corp.*, ASBCA No. 58828, 16-1 BCA ¶ 36,435 at 177,597-98.

Finally, AFG says that had it delivered the paint booth equipment on time, the government would have had no place to store it (app. br. at 17). We reject this argument, for two reasons. First, AFG does not demonstrate that its obligation to deliver the paint booth equipment was contingent upon the government identifying a place to store it. Second, we have found that the government was ready to receive the paint booth equipment when it was due.

AFG says that we should convert the default termination to one for the convenience of the government because, it says, Ms. Echols did not follow the

termination consideration factors listed at FAR 49.402-3(f) (app. br. at 17-21). We disagree. In *McDonnell Douglas Corp. v. United States*, 35 Fed. Cl. 358, 371-72 (1996), the court found that the contracting officer had not considered the FAR 49.402-3(f) termination factors and had not exercised discretion in terminating the contract for default, holding that the termination was prompted not by the contractor's default, but by the decision of the Secretary of Defense to withdraw funding for the A-12 program. The United States Court of Appeals for the Federal Circuit reversed, holding that the contracting officer terminated the contract for reasons related to contract performance: "the government denied additional funding for the A-12 program and terminated the contract for default because of concerns about contract specifications, contract schedule, and price—factors [all of which] are fundamental elements of contract performance." *McDonnell Douglas Corp. v. United States*, 182 F.3d 1319, 1329 (Fed. Cir. 1999).

Here, even if Ms. Echols did not address each of the factors in FAR 49.402-3(f), timely delivery of the paint booth equipment was a fundamental element of contract performance, and AFG's failure to satisfy that fundamental element constitutes default. However Ms. Echols arrived at her termination decision, the government may rely upon AFG's failure to do its job to justify the termination. *HK&S*, 19-1 BCA ¶ 37,268 at 181,352; *see Watts Constructors, LLC*, ASBCA No. 61518, 19-1 BCA ¶ 37,382 at 181,728 (citing and parenthetically quoting *HK&S* with approval). To paraphrase the Federal Circuit, if the government can establish that a contractor was in default, then the termination of the contract for default is valid.

AFG says that the government waived the default termination by engaging in post-termination discussions with AFG in an attempt to obtain the paint booth equipment (app. br. at 27). In *Aerospace Facilities*, 18-1 BCA ¶ 37,105 at 180,605, for purposes of determining whether the notice of appeal was untimely, we held that "[t]he [government's] willingness to engage AFG, discuss the facts surrounding the termination on three separate occasions and discuss whether AFG would deliver the paint-booth equipment served to keep the matter open and destroyed the finality of the termination notice." However, we do not agree that the government "waived" its termination of the contract for default by engaging in post-termination discussions in an effort to obtain the paint booth equipment.

AFG says that Ms. Echols did not exercise independent discretion in terminating the contract, but was directed to do so by her superiors (*see* tr. 1/184-85; app. br. at 36-37). We need not decide that issue. The contract incorporates FAR 52.249-8(a)(1), which provides (emphasis added) that "[t]he *Government* may . . . terminate this contract" for default; consequently, it does not matter whether Ms. Echols was directed by her superiors to terminate the contract. *See Schlesinger v. United States*, 390 F.2d 702, 709 & n.9 (Ct. Cl. 1968).

*Breach of contract*

Finally, the government says that the Board does not possess jurisdiction to entertain claims for money damages for alleged government breaches of contract because AFG has not presented a claim for those damages to a contracting officer (gov't br. at 41). The Board's jurisdiction to entertain a contractor's claim depends upon the contractor first submitting that claim to a contracting officer for a final decision. *CDM Constructors, Inc.*, ASBCA No. 59524, 15-1 BCA ¶ 36,097 at 176,238. Moreover, AFG must prove by a preponderance of the evidence that the Board possesses jurisdiction to entertain its monetary claims. *See Parsons Gov't Servs., Inc.*, ASBCA No. 62113, 20-1 BCA ¶ 37,586 at 182,508. AFG does not point to any money claim (or any claim at all) that it presented to the contracting officer; indeed, AFG seems to argue that it is not necessary for it to have done so (*see* app. br. at 32 ("To somehow suggest that [] there should be a concise [Contract Disputes Act] claim submitted to the contracting officer is unreasonable.")). Because AFG has not proven that the Board possesses jurisdiction to entertain its money claims, those claims are dismissed.

CONCLUSION

AFG's money claims are dismissed for lack of jurisdiction. Otherwise, the appeal is denied.

Dated: August 11, 2020

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I <u>concur</u>

LIS B. YOUNG
Administrative Judge
Armed Services Board
of Contract Appeals

(Signatures continued)

I concur                                    I concur

RICHARD SHACKLEFORD                         OWEN C. WILSON
Administrative Judge                        Administrative Judge
Acting Chairman                             Vice Chairman
Armed Services Board                        Armed Services Board
of Contract Appeals                         of Contract Appeals


I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 61026, Appeal of Aerospace Facilities Group, Inc., rendered in conformance with the Board's Charter.

Dated: August 11, 2020

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals